HENRY v. THE DUBUQUE & PACIFIC RAILROAD COMPANY.

1. RAILROAD COMPANY: PRIVATE PROPERTY. The legislature has no power, under the constitution of 1857, to authorize the taking of property for the use of a railroad company, before compensation is made to the owner, or is secured to be made when the amount thereof shall be determined by a jury.

2. LAW CONSTRUED. Under chapter 31, laws of 1853,[*] (An act granting to railroad companies the right of way,) the payment of the damages assessed, whether by a sheriff's jury or in the District Court, is a condition precedent to the right of a railroad company to enter upon and appropriate lands for the purposes specified in that chapter.

3. SAME. Where a railroad company located their road over certain land, and caused the damages sustained by the owner to be assessed by a sheriff's jury, under chapter 31, laws of 1853, whereupon the owner appealed to the District Court, where he recovered a judgment against the company, it was held that an appropriation of land by the company, before the payment of the compensation as assessed, rendered them liable as trespassers, and that the owner was not bound to rely upon execution on the judgment, or upon an injunction, as his only remedy.

---

[*] See Revision of 1860, chapter 55, article 3.

*Appeal from Dubuque District Court.*

SATURDAY, OCTOBER 6.

PLAINTIFF sues in an action of trespass for the act of defendant in entering upon his land on the 1st of January, 1855, and divers days since that time to the day of the commencement of this action, breaking up the ground therein, grading the same for the track of a railroad, &c. The answer denies a liability to the amount claimed, $10,000, but admits an indebtedness in the sum of $1600, with interest from November 28th, 1856; avers that by authority of the act of the legislature of this State, the defendants did locate their road over the plaintiff's land, and did have the damages assessed by a sheriff's jury under said act; that plaintiff appealed from said assessment; that said appeal was heard in the Dubuque District Court, and that plaintiff recovered therein judgment for $1600, on the 28th November, 1856; that said judgment remains in full force, unreversed and unannulled, and is a lien on the real estate of the company, and with the exception of a like judgment for $745, is a first lien on certain lands in the county of Dubuque.

For further answer defendants say, "not guilty," because the matters and things complained of have already been adjudicated between the parties in a certain appeal, &c., referring to the assessment and judgment aforesaid.

To the answer there was a demurrer substantially upon the ground that it does not show that defendants had made any payment or just compensation to the plaintiff for the land taken and occupied, as required by law. This demurrer was sustained, and defendants appeal.

*James M. McKinley* for the appellants.

*James Burt* for the appellee, cited 2 Iowa 288; *Bloodgood* v. *The M. & Hudson R. R. Co.*, 18 Wend. 1.

WRIGHT, J.—The material portions of the Right of Way Act referred to in the pleadings are as follows:

Section 1—Gives to a railroad corporation the right to take and hold so much real estate as may be necessary for the location, construction and convenient use of their road; but the land so taken, except by the consent of the owner, shall not exceed one hundred feet in width, unless the same should be necessary for water stations, excavations, &c.

Section 2—The corporation is given power to purchase and use real estate for a price to be agreed upon, or the damages to be paid, when not agreed upon, shall be ascertained and determined by commissioners, as prescribed in the act.

Section 3—If the owner of any real estate over which said railroad corporation may desire to locate their road, shall refuse to grant the right of way through his or her premises, the sheriff of the county in which said real estate may be situated, shall, upon the application of either party, appoint six disinterested free holders of said county, not interested in a like question, unless a smaller number is agreed upon by the parties, whose duties it shall be to inspect said real estate and assess the damages which said owner will sustain by the appropriation of his land for the use of said railroad corporation, and make a report in writing, to the sheriff of said county, who shall file and preserve the same, and if said corporation shall at any time before they enter, upon said real estate, for the purpose of constructing said road, pay to said sheriff, for the use of the owner, the sum so assessed and returned to him as aforesaid, they shall be thereby authorized to construct, and maintain their railroad over, and across said premises : Provided that either party may have the right to appeal from such assessment of damages to the District Court of the county where such lands are situated within thirty days after such assessment is made. But such appeal shall not delay the prosecution of the work upon said railroad, if said corporation shall first pay or deposit with the sheriff the amount so assessed by said free holders, and in no case shall said corporation be liable for the costs in appeal, unless the owner of said real estate shall be adjudg-

ed and entitled upon the appeal to a greater amount of damages than was assessed by said free holders. The company shall in all cases pay the costs of the first assessment. Chapter 31, Acts of 1853, p. 58.

The right to take private property for public use is expressly recognized by the constitution and laws of this State. The language of the constitution governing at the time of this assessment was: Private property shall not be taken for public use without just compensation. (Section 18, Art. 1). The language of the corresponding section in the present constitution is: "Private property shall not be taken for public use without just compensation first being made or secured, to be made to the owner thereof, as soon as the damages shall be assessed by a jury."

It is very clear that under the new constitution it would not be competent for the legislature to provide the means or method of ascertaining the landowner's damages, to be paid at some time after the appropriation of the land, or at any other time after the damages should be assessed. The just compensation referred to therein, must be made before or secured to be made as soon as the jury shall determine the amount, and it would not be competent for the legislature to provide for the postponement of the same to a time after such assessment. Whether under the constitution of 1846, the legislature could have provided that this compensation might be made after the appropriation, the method of ascertaining the same being fully and sufficiently pointed out, we need not determine as we unite in the opinion that under the Act of 1853, (quoted from above and referred to in the answer,) the legislature made payment of the damages assessed, whether by the sheriff's jury or in the District Court upon appeal, a condition precedent to the right of the company to enter upon and appropriate the land for the purposes specified in the act.

The plaintiff needed no constitutional declaration to protect him in the use and enjoyment of his property against any claim or demand of the company to appropriate the

same to their use, or the use of the public. To be thus protected and thus secure in the possession of his property is a right inalienable, a right which a written constitution may recognize or declare, but which existed independently of and before such recognition, and which no government can destroy. And yet for the public weal, for the use of the public, a right remains in the government or the people in their sovereign capacity, to take the property of the private citizen, or such portion as may be necessary, he being compensated. In the exercise of this right, the owner of the property should, as far as consistent with the exercise of this right of *eminent domain*, be strictly protected, and every substantial requirement of the law be fully complied with. And hence, if the legislature in the exercise of its power in this respect, determines as in this instance, that the benefits which the public might derive from improvements of the character named, were sufficient to justify the exercise of this right of *eminent domain*, and further provides that compensation shall precede the appropriation, it is not only perfectly competent for the legislature to do so, but such payment is essential to the acquiring of any right by the company to the lands of the claimant. As the legislature has in this case made such payment an essential condition to the right to appropriate, it follows that until made, the company could acquire no right, and were in no manner protected by the mere assessment and judgment.

It seems to us that the intention of the legislature that compensation should precede the entering upon the land for the purpose of constructing the road, could not have been more clearly and definitely expressed. Such language as the following, is without meaning upon any other hypothesis : " If said corporation shall at any time before they enter upon said real estate, &c., pay to said sheriff, &c., they shall thereby be authorized, &c." What under this language gives the authority ? Clearly the payment to the sheriff before entering upon the land. And then again the subsequent language providing that the appeal shall not suspend the work, " if the

. corporation shall first pay the amount assessed, &c." By
the use of this language the legislature has wisely and pru-
dently carried out the provisions of the fundamental law, and
carefully guarded the citizen in the quiet and proper enjoy-
ment of his property.   It was never intended by the consti- .
tution, nor by the law, that the corporation might rightfully
enter upon the land, grade the road and run the same, and
that the owner of the land should be turned over for his
damages as assessed to his execution against the property of
the company.   Private property, and the right of the owner
to be protected in its use and enjoyment, is too safely
guarded in this country to permit such a construction for a
moment.

But it is insisted that the finding or judgment in the Dis-
trict Court was an ascertainment of plaintiff's damages; that
this is conclusive as to the amount and that his remedy is to
enforce the collection of this sum with interest; to do which
he may, if the same cannot be made by execution, enjoin the
company in the use of the road across and over his land, un-
till the same is paid.   What has already been said will suf-
ficiently indicate our views in this respect.   We do not say
that plaintiff might not proceed by injunction and restrain
the company until the compensation as settled by the said
judgment should be made.   However this may be, we are
very clear that he is not confined to this remedy.   He has
his election to treat the company, as in the possession of a
portion of his land without right, as mere trespassers, and
to make them responsible accordingly.   Until they pay they
have no right to take and use the same.   Before payment
they have no more right to enter upon and occupy the land
for the purpose of running their road, or any other purpose
than that of making surveys or the like, than if commission-
ers had not been selected, or than they would have if they
had entered by force and violence.

How far the payment of this judgment at this time or here-

after may have the effect of protecting the company, we need not now determine. We only determine that without the payment of the compensation contemplated and provided for by the constitution and statute, they are not protected. In other words that the judgment in and of itself gives them no right to enter upon the plaintiff's land and use the same in the manner and for the purpose charged in the petition, and that the demurrer to the answer was properly sustained.

The case of *Bloodgood* v. *M. & H. R. R.*, 18 Wend. 1, fully sustains the views above expressed. The language of the New York statute, as we construe it, is not so clear in declaring that payment should precede the entry upon the land and the construction of the road over the same. And yet it was there held that such payment was a condition precedent, and the conclusion is sustained by a weight of reasoning that is well considered and unanswerable.

Judgment affirmed.