## CAIRO AND FULTON R. R. CO. vs. TURNER.

1. EMINENT DOMAIN.

   Article v, of amendments to the Constitution of the United States, which provides that private property shall not be taken for public use without just compensation, only applies to the exercise of the right of eminent domain by the United States.

2. ————: *Right of entry, compensation, etc.*

   Railroads are public improvements, for the construction of which private property may be taken, under the authority of the Legislature; and, in the absence of a distinct provision of the Constitution requiring payment to precede the appropriation, a railroad company may enter upon land required for a right of way before the assessment and payment of compensation, if there is an adequate remedy for the land owner in existence at the time of the entry.

3. ————: *Remedy, etc.*

   The charter of the Cairo and Fulton Railroad Company granted it the right to enter upon and appropriate a right of way over all lands along the line of its road. A subsequent act, approved the 22d of January, 1855, provided a method of assessing damages in favor of the land owner, upon the application of either party. The Constitution of 1868, subsequently adopted, provided that no right of way should be appropriated by any corporation until compensation therefor had been first paid, or deposited in money, for the owner. After the adoption of the Constitution of 1868, the Cairo and Fulton Railroad Company was constructed; and an act to

Cairo and Fulton R. R. Co. vs. Turner.

ascertain damages in such cases upon the application of the corporation, and in harmony with the provisions of the Constitution of 1868, above referred to, was passed by the Legislature. Held:

*First*—That the right of way, acquired under the charter of the corporation, could not be affected by the subsequent constitutional provision.

*Second*—That the act of 1855, prescribing the manner of assessing damages, was not repealed, as to the Cairo and Fulton Railroad Company, by the subsequent enactment, or constitutional provision, but, as to it, continued in force.

*Third*—That the statutory remedy in favor of the land owner was exclusive, and he could not maintain ejectment for land appropriated for a right of way.

APPEAL from *White* Circuit Court.

Hon. JOHN J. CLENDENIN, Circuit Judge.

*Loughborough* and *Rose*, for appellant.

*Compton & Parsons, contra.*

ENGLISH, CH. J.:

On the 1st of September, 1873, Blakely D. Turner brought an action of ejectment against the Cairo and Fulton Railroad Company in the Circuit Court of White County, for a tract of land containing about five acres, and described in the complaint to be a tract of 200 feet in width, bounded on the north by the north boundary line, and on the south by the south boundary line of the north fractional half of the northwest fractional quarter (south of Little Red River) of fractional section 3, township 7 north, range 6 west, and on the east and west by lines parallel to, and equidistant from, the center line of the main tract of said railroad.

The defendant answered, after the formal denial of plaintiff's title and rights of possession, that:

"It is a corporation existing under the laws of the State, having authority to contract, operate and maintain a railroad; that it has constructed, and is now maintaining and operating a rail-

road, the line of which is laid across or upon the tract of land described in the complaint, and for such purpose defendant has taken and now holds, in pursuance of law, a portion of said land, to-wit: a strip of 100 feet in width across said tract, being measured 50 feet on each side of the center line between the rails of its said railroad, etc.

That its possession and occupancy of said portion of said land was had and begun for more than eighteen months before the commencement of this action, and with the full knowledge of the plaintiff, who well knew the purpose and intention of this defendant in taking possession of the land, to be to construct and operate a continuous line of railroad across the entire State, one portion of which would be laid on the land as aforesaid; and the plaintiff well knew, that to construct said railroad across said land would require the defendant to expend large sums of money, and yet the plaintiff allowed such work to be done, and large sums of money to be expended thereon without objection thereto; and plaintiff well knew that the portion of said railroad laid across said land would be, and is, essential to the operation of the entire line, and without it the defendant could not, and can-not, fulfill its contracts to carry the mails of the United States, and to transport freight and passengers, which, by law, it is bound to do. That defendant was, and is still, willing and ready to make compensation to the lawful owner of said tract of land for any and all damages to which said owner may be entitled by reason of the appropriation of the land as aforesaid, whenever such damages are ascertained and fixed in the manner prescribed by law."

The cause was submitted to the court sitting as a jury, October 2d, 1874, on the following agreed statement of facts:

"*First*—The plaintiff is, and was, at and before the institution of the suit, and when the defendant took possession thereof, the owner in fee of the land in controversy.

"*Second*—The defendant entered into possession of so much of the land in controversy as is within fifty feet of the center of the track of defendant's railroad, on either side thereof, in the month of March, 1872, and constructed said railroad thereon, and has ever since held possession of the same, and used it as a right of way for said road. No compensation has ever been made to the plaintiff for said land, or proceeding instituted by either party looking to that end, or agreement of any sort entered into between them in regard to it.

"*Third*—The yearly rental value of said land, without regard to or including the improvements and fixtures placed thereon by defendant, is $5, since defendant entered. The same, including said improvements and fixtures, and estimating it in reference thereto, is $100."

The defendant asked the court to declare the law as follows.

"That the land having been taken possession of by the defendant merely for a right of way, and for the purpose of building and operating a railroad across said land, an action of ejectment will not lie in favor of the plaintiff, and that the finding should be for the defendant."

Which the court refused, but declared that on said agreed state of facts, plaintiff was entitled to judgment.

The court rendered judgment in favor of plaintiff for possession of the land, and for $250 damages for its detention.

The defendant moved for a new trial on the grounds:

"*First*—The court erred in refusing the declaration of law asked by the defendant.

"*Second*—The finding and judgment of the court are unsupported by the evidence in the case."

The court overruled the motion, and defendant excepted and appealed.

*Vol. XXXI.—32.*

The Cairo and Fulton Railroad Company was chartered by act of the General Assembly, approved 12th January, 1853, under the Constitution of 1836.

It was empowered by its charter to survey, locate, construct, complete, alter, maintain and operate a railroad from a point on the Mississippi River, opposite the mouth of the Ohio, in the State of Missouri, by way of Little Rock, to the Texas boundary line, near Fulton, with branches, etc. Sec. 2. And to unite its road with the southern end of the Missouri road, at some suitable point on the line which divides Arkansas and that State, and its southern end with any road coming in from Texas, at such point on the boundary line, which divides that State from Arkansas that might be deemed most eligible; and to combine with other railroad corporations, etc. Sec. 10.

Section 3 provides that:

"The said corporation shall have the right of way upon, and may appropriate to its sole use and control, for the purposes contemplated herein, land not exceeding one hundred feet in width on each side of and through its entire length; may enter upon and take possession of and use all and singular, any lands, streams and materials of any kind for the location of depots, and stopping stages, for the purpose of constructing bridges, dams, embankments, excavations, spoil-banks, turnouts, engine-houses, shops, and other buildings necessary for the construction, completing, altering, maintaining, preserving in complete operation of said road; all such lands, waters, materials and privileges belonging to this State are hereby granted to said corporation for said purpose; but, when owned or belonging to any person, company or corporation, and cannot be obtained by voluntary grant or release, the same may be taken and paid for, if any damages are awarded, in the manner provided for by law; *Provided*, nothing in this section contained shall be so construed as to authorize the said corporation to interrupt the navigation of said streams."

By act of Congress of February 9th, 1853, the right of way through the public lands was given to the States of Arkansas and Missouri, and a large amount of lands granted to said States to aid in the construction of the Cairo and Fulton railroad, and its branches, etc., with a provision that said railroad and branches should be and remain a public highway for the transportation of the property, troops and mails of the United States, etc.

The line of the Cairo and Fulton railroad was surveyed, located and fixed under the provisions of the act incorporating the company, and, by act of 16th January, 1855, the survey and location so made were approved, and the lands donated by Congress to the State for that purpose, granted to the company to aid in the construction of the road, etc.; and, by act of 26th November, 1856, the grant was confirmed, etc.

By act of Congress of 28th July, 1866, the act of 9th February, 1853, giving the right of way, and granting lands to aid in the construction of the road and branches, was revived and extended, and an additional grant of lands made, etc.

EMINENT DOMAIN:

Article v, amendments to the Constitution of the United States, declares that private property shall not be taken for public use without just compensation, but this provision is intended only as a limitation upon the exercise of that power by the government of the United States. *Barron* v. *Baltimore*, 7 Peters, 243; *Fox* v. *Ohio*, 5 How., 410, 434–5; 1 Red. on Railw., p. 231.

The Constitution of most of the American States contain a similar provision. Our Constitution of 1836 contained no such provision, but, in *Martin et al., ex parte*, 13 Ark., 206, it was well said by Chief Justice Watkins: "That this prohibition upon the Legislature is implied from the nature and structure of our government, even if it were not embraced by necessary implication in other provisions of the bill of rights. The right of

eminent domain is inherent in the goverment or sovereign power, and equally is, or ought to be, in every government of laws the vested right to his property in the citizen; and the right of eminent domain means, that when the public necessity or common good requires it, the citizen may be forced to sell his property for its fair value. The duty of making compensation may be regarded as a law of natural justice, which has its sanction in every man's sense of right, and is recognized in the most arbitrary governments."

The duty to make compensation for property taken for public use, is regarded, by most enlightened jurists, as founded in the fundamental principles of natural right and justice, and as lying at the basis of all wise and just government, independent of all written constitutions or positive law. 1 Red. on Railw., 231; *Bradham* v. *Rogers*, 20 Johns., 103; 2 Kent. Com., 339; *Henry* v. *Dubuque and Pacific R. C.*, 10 Iowa, 543.

Railroads for the conveyance of travelers, or the transportation of merchandise, etc., from one part of the State to another, are public improvements, and for the public benefit, for the construction of which private property may be taken under the authority of the legislature, upon paying a just compensation therefor to the owners. The eminent domain, or right to resume the possession of private property for the public use upon paying a just compensation therefor, remains in the government, or the people in their sovereign capacity; and such right of resumption may be exercised, not only for the public safety, but also where the interest, or even the convenience of the State, or of its inhabitants, is concerned; as for the purpose of making turnpike and other roads, railways, canals, etc., for the accommodation of the public. It belongs to the legislative power of the State to determine whether the benefits which the public are to derive from such improvements, are of sufficient importance to

justify the exercise of this right of eminent domain, in thus interfering with private rights of individuals; and the right itself may be exercised by the government through its immediate officers or agents, or indirectly through the medium of corporate bodies, etc. Walworth, chancellor, in *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 Wend., 9; *Beekman* v. *Saratoga and Schenectady Railway Co.*, 3 Paige, 45.

TIME OF COMPENSATION:

There is much conflict and confusion in the adjudications of the State courts in relation to the time when compensation is to be made to the owner for property taken for public use, growing in part out of the diversity of Constitutional provisions on the subject, and the want of uniformity in the statutes of the States regulating the ascertainment and payment of damages.

The Constitution of 1836, as above remarked, was silent on the subject of the exercise of the right of eminent domain by the State.

In *Martin et al., ex parte*, Ch. J. Watkins remarked : " To suppose that the legislature, under our Constitution, possessed the power of divesting the citizen of his right to property, without first providing in some equitable mode for ascertaining its value, and making him compensation for it, and could exercise this power without restraint, would be subversive of the government, and equivalent to revolution and anarchy, since it would defeat one of the primary objects for which the government was established."

This is in harmony with the prevailing views of American jurists on the subject. Mr. Kent says : " A provision for compensation is a necessary attendant on the due and Constitutional exercise of the power of the law-giver to deprive an individual of his property without his consent; and this principle in American Constitutional jurisprudence is founded on natural equity,

and is laid down by jurists as an acknowledged principle of universal law." 2 Kent. Com. (8 Ed.), p. 399.

But further along in the opinion of Ch. J. Watkins, in *Martin et al., ex parte,* he uses the following language : " Now we feel it our duty to express the opinion we entertain, that the prohibition upon the power of the legislature to take private property for public use without providing for just compensation to be first made to the owner, is necessarily implied in the articles (of the bill of rights) above quoted."

Had he said in this sentence that it was not in the power of the legislature to take private property for public use without first providing for just compensation to be made to the owner, it would have been in harmony with his previous expression on the same subject, above copied, and with the prevailing adjudications in the States where there is no express Constitutional provision requiring the compensation to be actually paid before the property is taken for public use.

The question as to the time when compensation should be made, or, in other words, when the damages occasioned to the owner of property by its appropriation to public use should be paid, was not before the court in *Martin et al., ex parte.*

The act of 6th January, and supplemental act of 10th January, 1851, providing for the reclaiming of swamp and overflowed lands by levies, drains, etc., made no provision whatever for the compensation of individuals for property taken or injured in constructing such levies or drains. The swamp land commissioner constructed a levee across a bayou, or lake, which stopped the natural flow or drain of waters, and caused the flooding of the cultivated lands of Martin and others, who applied for an injunction. The court held, in effect, that the legislature having made no provision for compensating them for such damages, the commissioners might be enjoined upon a proper showing, notice, etc.

In *Roberts* v. *Williams*, 15 Ark., 49, Judge Scott remarked that private property could not be taken for public use without providing for just compensation to be first made to the owner, citing *Martin et al., ex parte.* That was a proceeding to open a private road under secs. 61–66, Ch. 149, Gould's Digest, and the proceedings were held invalid because of the non-compliance with the provisions of the statute in relation to ascertaining and ordering the payment of damages occasioned to land owners by the opening of the road.

*Whitehead and wife* v. *Arkansas Central Railroad Company*, 28 Ark., 460, was decided under a provision of the Constitution of 1868, and will be noticed again below.

According to the current of authorities, in the absence of a distinct provision in the Constitution requiring the payment of compensation to precede the taking of the property, the assessment and payment of the compensation need not precede the entry upon the land by the company for the construction of its road, provided there is an adequate remedy, afforded before such entry is made, for obtaining compensation, which may be provided in the charter or existing laws. The payment or tender of the compensation, or an appropriate provision therefor, is generally required to precede an appropriation of the owner's property by the road. Pierce on American Railway law, 162; *Bloodgood* v. *Mohawk and Hudson Railroad Company*, 18 Wend., 9 ; *Smith et al.* v. *Helmer*, 7 Barb., 416 ; *Gould* v. *Glass*, 19 id., 190 ; *Rexford* v. *Knight*, 1 Kernan, 413; *Thatcher et al.* v. *Dartmouth Bridge, Co.*, 18 Pick., 501 ; *Tuckahoe Canal Co.* v. *Tuckahoe Railroad Company*, 11 Leigh., 77 , *Symonds et al.* v. *Cincinnati*, 14 Ohio, 171 ; *Hatch* v. *Vt. Cen. R. R. Co.*, 25 Vermont, 66 ; *People, ex rel., Green* v. *Michigan Southern R. R. Co.*, 3 Mich., 496 ; *Smith* v. *McAdam*, id., 506 ; *Rubottom et al.* v. *McClure*, 14 Blackf., 505; *Hankins* v. *Lawrence*, 8 id., 266 ; *New Albany and*

*Salem R. R. Co.* v. *Connelly*, 7 Indiana, 32 ; *Hamilton* v. *Annapolis and Elk Ridge R. R. Co. et al,* 1 Maryland, Ch. 107 ; *Commissioners, etc.,* v. *Bowie*, 34 Ala., 461 ; *Raleigh and Gaston Railroad Com.* v. *Davis*, 2 Dev. & Batt. Law R., 451.

The act incorporating the Cairo and Fulton Railroad Company, after giving the right of way, etc., over public and private lands, provides, as above shown, that where the land belongs to any person, etc., and cannot be obtained by voluntary grant or release, the same may be taken and paid for, if any damages are awarded, in the manner provided for by law. Sec. 3.

The act provides no mode for ascertaining the damages, and enforcing the payment of compensation to the land owner. Had this not been done by a subsequent act, passed before the road was constructed over the land of appellee, he might have treated the corporation, its officers, employes, etc., as trespassers, or enjoined the corporation from appropriating his land until compensation was made to him. *Martin et al., ex parte, supra.*

But by act of 22d January, 1855, this omission in the charter was supplied. See Gould's Digest, Ch. 140.

It has been held that provision for compensation may be in a subsequent law, and that an act taking private property for public use is not void because it does not provide compensation or a mode of ascertaining it, but that its execution will be enjoined until such provision is made, and the compensation paid. *Bonaparte* v. *Camden and Amboy Railroad Company*, 1 Baldwin C. C. and C., 205.

The act providing for compensation, above referred to, provides, in substance, that if any person owning lands over or upon which any railroad shall be surveyed and located, by any company incorporated to build a railroad, shall not have relinquished the right of way, etc., etc., the case shall be stated in writing, accompanied by a plat description of the land required for the

Cairo and Fulton R. R. Co. vs. Turner.

road, to the judge of the Circuit Court of the county in which the land is situated, etc., in term or vacation, and the judge shall appoint five impartial and disinterested freeholders and citizens of the county, etc., to view said lands, etc., and report, under oath, what damages will be done to said land or improvements thereon, stating the amount of damages, etc., and return the petition and plat of the land condemned. Notice to the owner, etc., is provided for. Sec. 1. The persons appointed to view and value the land are required to file their report in the office of the clerk of the Circuit Court, and if no objection be made, the court is required to enter judgment in favor of the owner against the company for the damages assessed. If objections are made, they are to be determined by the court. *Providing*, that during the pendency of the proceedings to assess the value of the land, the construction of the road shall not be delayed, and the company may enter upon the land, etc., upon giving bond and security, to be approved by the clerk or court, that it will pay to the owner of the land all costs and damages adjudged against it, within thirty days after the rendition of the judgment. Secs. 2 and 3.

These sections contemplate the application for review and assessment of damages to be made by the corporation, but sec. 4 manifestly provides that the land owner may make the application, and limits the time for him to apply, to two years after the road is finished over his land, with exceptions in favor of persons laboring under disabilities.

Though it is a matter of public history that the land owners on the line of the Cairo and Fulton railroad favored its construction, and generally granted the corporation the right of way over their lands without demanding compensation, yet if it had been constitutionally requisite in all cases where the right of way was not voluntarily conceded, for the corporation to cause

the damages to be ascertained, and actually pay them before entering upon the lands to construct the road, persons disposed to litigate, might, by protracting litigation, have delayed the completion of this great public highway for many years, to the public detriment.

If it be objected that the corporation might not pay the judgment rendered on the award of damages, and it and its securities might be insolvent, and thereby compensation might be defeated; it may be answered that the land owner is not divested of his title, and the right to the easement does not vest in the corporation until the damages awarded are paid; and besides the owner's paramount claim upon the land, chancery, on his timely application, would, as we have seen, restrain the corporation by injunction, from the use of the property until it renders the compensation.

Section 48, Article v, of the Constitution of 1868, provides that: "The General Assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws, but all such laws may from time to time be altered or repealed. The property of corporations, now existing, or hereafter created, shall forever be subject to taxation, the same as the property of individuals. No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made in money, or first secured by a deposit of money to the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law."

This Constitution, though since abrogated, was in force when appellant constructed that portion of its road which crosses the land of appellee, but long before the adoption of this Constitution, and when the Constitution of 1836, which contained no

such provision, was in force, the Legislature, by the act incorporating the appellant corporation, in the exercise of the right of eminent domain, granted to it the right of way over all the lands along the line designated for its road, the survey was made, the roadway located and approved, and provision made for ascertaining damages, and rendering compensation to such land owners as might claim it, for such right of way over their lands.

We are not prepared to say that the framers of the Constitution of 1868, could deprive the appellant corporation of any substantial rights or franchises clearly vested in it by its preexisting charter.

In *Whitehead and wife* v. *Arkansas Central Railroad Company,* 28 Ark., 460, above referred to, appellants sued appellee in trespass for entering upon and appropriating their land for a right of way.

The appellee was organized as a corporation, after the adoption of the Constitution of 1868, and under the act of July 23d, 1868, to provide for a general system of railroad incorporation. Acts of 1868, p. 290.

The court held that the ascertainment and payment of damages, as prescribed by the section of the Constitution of 1868, copied above, must precede the entry upon the land by the corporation.

Similar decisions have been made under like Constitutional provisions, as before indicated.

REMEDIES OF THE LAND-OWNER, ETC.:

Section 23, of the act of July 23d, 1868, providing for a general system of railroad corporation, provides a mode for ascertaining damages, and compensating land owners for the right of way over their lands, etc., but by the express language employed, it applies to corporations thereafter organized under the act, and could have no application to the appellant corporation. Moreover this section was declared to be in conflict with section 48,

Article v, of the Constitution of 1868, above copied, in *White-head and wife* v. *Arkansas Central Railroad Company, supra.*

On the 28th of April, 1873, the Legislature passed an act "for the better regulation and efficiency of railroad companies," in which a mode of ascertaining damages, and compensating land owners for the right of way is provided, and was no doubt intended to conform to the requirements of section 48, Article v, of the Constitution of 1868. Acts of 1873, p. 290; Gantt's Digest, sections 4944, 4953.

It makes no provision for land owners to apply for the assessment of damages, but requires "any railroad company organized under the laws of the State, after having surveyed and located the line of their road, in all cases where such company fails to obtain, by agreement with the owner of the fee of lands through which such lines of road is or may be located, the right of way over the same, to apply to the Circuit Court of the county in which the land is situated, by petition, to have the damages for such right of way assessed," etc., etc.

Provides for the damages to be assessed by a jury, and requires the company to deposit the amount of damages in court, or pay it to the owner, whereupon it may enter upon, use, and have the right of way over such land, forever.

This act was passed after the appellant corporation had entered upon, and constructed its road over the land of appellee, and if it was intended to apply to railroad corporations other than such as were organized under the general law, which is by no means clear, we would not give it a retroactive effect, so as to make the appellant corporation, acting under a long pre-existing special charter, a trespasser in entering upon the land of appellee.

The act of January 22d, 1855, in conflict with no Constitutional provision existing at the time it was passed, and unrepealed as to the appellant corporation at the time it entered upon

the land of appellee, afforded him a remedy, on his own application, for the ascertainment and payment of damages for the right of way over his land, granted to the appellant by its charter.

Mr. Redfield says: "It seems to be well settled, notwithstanding some exceptional cases, that the remedy given by statute to land owners, for injuries sustained by taking land for railways, is exclusive of all other remedies.

"But if the railway company have assumed to appropriate the land, in violation of the provisions of the statute to be complied with on their part, their acts are ordinarily to be regarded as trespasses; and when they have acquired the right to the use of the land, but have omitted some duty imposed by the statute, or where they have been guilty of negligence, or want of skill in the exercise of their legal rights, they make themselves liable to an action upon the case at common law." 1 Redfield on the Law of Railways, p. 336–8.

Again he says, after noticing English cases: "The general principle that the statute remedy, as far as it extends, is exclusive, seems to be universally adhered to in the American courts, with slight modfiication, some of which are, and some are not perhaps, entirely consistent with the maintenance of the general rule." id., p. 339.

Mr. Pierce says: "If both parties have the power to carry the statute remedy into effect, and there is no prior obligation on the company to resort to it, the injured party cannot avail himself of an action at common law, and is confined to that remedy. But if the company alone can put it into operation, or is under a special obligation to carry it into effect, and has not done so, the injured party is not deprived of his remedy by action." Pierce on American Railroad Law, 230.

*Daniels* v. *The Chicago & N. W. R. R. Co.*, 35 Iowa, 129, is the only ejectment case cited by counsel for appellee.

Cairo and Fulton R. R. Co. vs. Turner.

The court quoted, with approbation, the rule as laid down by Mr. Redfield and Mr. Pierce above copied, but held that by the language of the Constitution of Iowa, and the terms of the statute providing for the assessment of damages, the tender or payment of compensation was a condition precedent to the right of the company to enter upon the land, and that the company, having entered upon the land without doing either, the owner could maintain ejectment for the land.

So in *Memphis and Charleston Railroad Co.* v. *Payne*, 37 Miss., 700, which was trespass by the land owner against the company, by the terms of the charter the assessment of damages, and the payment or tender of them, were required to precede the entry upon the land by the company, for construction.

If persons who have looked on, and, without objection, seen the Cairo and Fulton Railroad Company construct its road not only across their lands but over its entire line, and become a great public highway, can at any time within the period of limitation applicable to the action of ejectment, maintain that form of action for the lands and road equipments, with damages for their detention, enhanced by the improvements put upon the lands, as in this case, the injury to the corporation and the inconvenience to the public might be very great.

If the appellee was not confined to the statute remedy, as it seems from the authorities he was, he should in justice be required to resort to some remedy that would give him the value of his land, and leave the company in the use of the easement.

The judgment is reversed, and the cause remanded with instructions to the court below to set aside the verdict.