E. E. SCOTT, Appellee, v. PRICE BROS. COMPANY et al., Appellees; IOWA ELECTRIC COMPANY, Appellant.

December 17, 1927.

Rehearing Denied December 14, 1928.

*B. I. Salinger* and *Galer & Galer*, for appellant.

*F. S. Finley* and *McCoid, McCoid. & McCoid*, for appellees.

Evans, C. J.—I. The pleadings are somewhat obscure. On its face, the petition does not disclose concretely what the  trouble is about. Some phases of the case have hitherto been presented to us under an application for a restraining order suspending the operation of the decree, pending the appeal. We granted such application, upon condition that a bond for $25,000 be filed, for the protection of the appellee.

The background (as well as the foreground) is a condemnation proceeding initiated by the appealing defendant, and afterwards dismissed. The appealing defendant is a public service corporation, organized for the purpose of manufacturing and distributing electric light and power. The other defendants were contractors and servants of the appealing defendant, who were engaged as such in carrying out the enterprise of the appealing defendant. The Iowa Electric Company is the sole defendant in interest before us on this appeal, and will be referred to in our discussion as "the defendant."

Very many years ago, a dam was constructed in Henry County across the Skunk River, and the same has been maintained continuously since its construction. It is referred to in

the record as the "Wilson" dam, and as the "old" dam. This dam and the rights and privileges appurtenant thereto were acquired by the defendant, or its corporate predecessor, more than fifteen years ago. Up to that time, the dam had maintained a water level of seven feet. By certain proceedings had in 1911 to 1913, the defendant established its right to maintain a water level of nine feet. In 1924, the defendant obtained from the executive council permission to rebuild its dam to a higher level, conditioned upon making compensation to the upper proprietors of land who would be affected by the higher level. The plaintiff is one of such upper proprietors, and is the owner of two or three farms so situated, as alleged, that each would be flooded to a substantial extent by the higher level proposed by the defendant.

The defendant initiated a condemnation proceeding; wherein it named the plaintiff and others as upper proprietors whose land would be affected by the improvement. The sheriff's jury awarded damages to the plaintiff. The defendant neither paid the damages thus awarded, nor did it deposit the amount thereof with the sheriff. It did prosecute an appeal from such award to the district court. In the district court, a controversy arose whether the plaintiff was entitled to claim damages for other acreage of his land than that specifically described by the defendant in its application for a sheriff's jury. That controversy, as such, is not before us on this appeal. Some time after the initiation of the condemnation proceedings, the defendant applied to the executive council for the further permission to build a dam at a location 300 feet downstream from the "old" dam. This permission was granted, subject to the same conditions as before. Thereupon, the defendant dismissed the pending condemnation proceeding, and in effect refused to initiate another. In the meantime, it had commenced work upon the construction of the new dam, and had incurred large expenditure thereon. Such was the status when the decree appealed from was entered in the district court. This decree found that the proposed dam in course of construction by the defendant, as indicated by the plans and specifications pursuant to which the construction was proceeding, would result in damage to the plaintiff; and injunction was ordered against its erection or maintenance. The order of injunction, however, was made provisional, in that the de-

fendant was permitted to avoid the same by paying into the hands of the sheriff the amount of damages previously awarded by the sheriff's jury to this plaintiff, and by initiating further condemnation proceedings involving other lands of the plaintiff's, which had been excluded in the first proceeding. Such is the decree from which this appeal was taken.

At the time of the trial, the dam proper had not been built to a higher elevation than the "old" dam. But the plan of construction was such that the additional elevation provided for in the plans and specifications could be readily superimposed. Moreover, a power house had been constructed, which extended 110 feet into the bed of the stream, and operated as a dam, to that extent, to an indefinite height above that of the "old" dam. All the abutments which were to support the floodgates were erected to a height much in excess of the "old" dam. The construction actually made, including the power house and the abutments and piers, reduced the flowage space to 60 feet; whereas the flowage of the "old" dam was more than 300 feet. This restriction of itself tends, in time of flood, to raise the water level higher than the lower level of the dam itself.

The application for a stay order, which we granted, was pressed upon us with much force, upon the ground that the defendant had no intention to build its new dam to any higher level than that of the "old" dam, and that all its construction work was consistent with this intention on its part.

Upon the record now before us, no such declaration of intent was made in the court below, nor is any such now made in this court. Apart from a question of jurisdiction, to be considered herein later, the only defense presented for our consideration is predicated upon the following portion of the answer:

"That the plaintiff is not entitled to the relief demanded, for the reason that plaintiff has an adequate remedy at law for the recovery of the damages, if any, they will suffer, as alleged in his petition.

"Plaintiff's petition is without equity, and no facts are alleged therein which entitle the plaintiff to equitable relief; wherefore, they ask that said action be barred, and that they have judgment for costs."

The proposition is set forth in appellant's brief as follows:

"2. Where the rights of the plaintiff are bottomed upon injury which may be compensated for as damages and in money, may he by injunction stop what he says will cause him such injury, where he makes no claim that the defendants are insolvent, and sets forth no fact showing or tending to show that a suit at law to recover his damages is not an adequate remedy?"

Upon the merits of the appeal, therefore, the sole question presented for our consideration is whether, upon the facts pleaded and found, the plaintiff was entitled to the remedy of injunction, in the absence of an allegation of the insolvency of the defendant.

In the consideration of this question, we must assume, as the lower court found, that the construction of the dam by the defendant is for the purpose of raising the water level substantially above that caused by the "old" dam, and that such will be the result, not only of its finished construction, but of its present construction, in times of flood.

The argument for appellant is that the plaintiff has a "plain, speedy, and adequate remedy" at law for damages, and that, therefore, of necessity he is entitled to no relief in equity by injunction. The distinction is urged as between an accomplished and continuing trespass, on the one hand, and a mere threatened trespass, on the other. It is urged that, though injunction will lie in the first instance, it will not do so in the second. This broad proposition upon which the appellant predicates its argument is subject to many qualifications.

Whether the right to prosecute an action for damages in a jurisdiction perhaps remote *is* a "plain, speedy, and adequate remedy" to a landowner whose property is seized or about to be seized under the power of eminent domain is a question which has not hitherto been specifically raised in this court. Sufficient, perhaps, at this point to say that such right has never heretofore been so regarded in this state. The Constitution expressly provides:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, * * * " Article 1, Section 18.

Pursuant to the foregoing requirement, the legislature has provided the method of condemnation proceedings. Under these proceedings, the public corporation is required to pay the amount of the award of the sheriff's jury *before* it enters into possession of the land in the exercise of the power of eminent domain. Until such payment is made, the owner is not required to submit to any invasion of his land. The acts of the appellant, as described by this record, amount to an evasion on its part of the obligations imposed upon it by the provisions of Constitution and statute as a condition precedent to its exercise of the power of eminent domain. Under our previous decisions, we have always protected the landowner against evasion of this procedure. This constitutional and statutory requirement is equally obligatory upon the corporation, whether it be *solvent* or *insolvent*. It cannot be said that the injunction in this case is directed against a *mere threat* of trespass, as argued by appellant. On the contrary, it is directed to the protection of a summary remedy vouchsafed to the plaintiff by Constitution and statute. Such was the effect of the provisional terms of the decree entered by the court below. That an injunction may properly issue, upon application of the plaintiff, to protect his constitutional and statutory *remedy*, has been frequently recognized by us heretofore, and has seldom been challenged. *Iowa Power Co. v. Hoover*, 166 Iowa 415; *Irish v. B. & S. W. R. Co.*, 44 Iowa 380; *Hibbs v. C. & S. W. R. Co.*, 39 Iowa 340; *Richards v. Des Moines V. R. Co.*, 18 Iowa 259; *Henry v. Dubuque & P. R. Co.*, 10 Iowa 540. In *Hibbs v. C. & S. W. R. Co.*, we said:

"If the corporation enter upon the land without the assent of the landowner, or without having taken the course prescribed by law, it is a trespasser. Its occupancy of the land will raise the presumption of its intention to continue to use it; the landowner may waive the trespass, refrain from ejecting the trespasser, and treat the corporation as though it desired to enter into and occupy lawfully the land, and require it, under the provisions of the statutes above cited, to make just compensation. If this course be pursued, no reason can be given for limiting the remedy to any time prior to the corporation, acquiring the right, by possession or otherwise, to hold the land. *Daniels v. C. & N. W. R. Co.*, 35 Iowa 129.

"IV. After a condemnation of the land under the statute

in proceedings instituted by the railroad company, it will be restrained by injunction from operating its road over the land condemned, until payment of the damages awarded. *Richards v. The D. M. V. R. Co.*, 18 Iowa 260; *Henry v. D. & P. R. Co.*, 10 Iowa 540. It is plain that the same rights will accrue to the landowner in case he institutes the statutory proceedings for assessing damages.''

We hold, therefore, that the injunctional decree entered below was properly conditioned, and that, in the absence of performance of such condition by the appellant, the injunction should be operative against it.

II. The defendant entered a special appearance in the district court for the purpose of objecting to the jurisdiction of the court. The challenge to the jurisdiction was by motion  to quash the service of the original notice on the ground that it was not effective. The challenge was supported by affidavits, and resisted by counter affidavits. The trial court held the service sufficient. Thereupon, the defendant pleaded to the merits, and participated in the trial on the final hearing. Appellant asks in argument that the ruling of the lower court on its motion to quash be now reviewed and reversed. The appellee contends that, because of the general appearance thus entered by the defendant, it is in no position to ask for a review of the ruling of the court on the sufficiency of the service of the original notice. This contention is resisted by appellant.

The question whether a defendant who appears specially to object to the sufficiency of notice may have the adverse ruling of the trial court reviewed on appeal, notwithstanding a general appearance entered by the defendant after an adverse ruling, and notwithstanding his participation in the trial, is one upon which there is a diversity of decision in the various states. The question is largely controlled by the respective statutes of the states, and in the main, judicial decision thereon consists in a construction of the particular statute. The statutes of this state have for many years looked with disfavor upon the special appearance as a dilatory procedure, as indicated by Section 2626, Code of 1873, and Section 3541, Code of 1897. In 1911, the legislature enacted our present Section 11088 (Code of 1924), which is as follows: .

"11088. Any defendant may appear specially for the sole purpose of attacking the jurisdiction of the court. Such special appearance shall be announced at the time it is made and shall limit the party to jurisdictional matters only *and shall give him no right to plead to the merits of the case.*"

The contention of the appellant is that, in the procedure adopted by it, it was wholly within the protection of the foregoing statute. That it had a right to enter its special appearance and thereby to challenge the jurisdiction of the court without submitting to such jurisdiction, is undeniable. The question is not at that point. The question is whether, under this section, it could plead to the merits, and yet remain outside of the jurisdiction of the court.

It is frankly conceded by the distinguished counsel for appellant that, under Section 3541 of the Code of 1897, which was a re-enactment of Section 2626 of the Code of 1873, an appearance by the defendant for any purpose became a general appearance, and rendered the question of defective service of original notice quite immaterial. This Section 3541 was amended by the thirty-fourth general assembly (1911). By this amendment a special appearance for the purpose of challenging jurisdiction was permitted, as set forth in Section 11088 above quoted. Whereas the original Section 3541 provided that a special appearance should be deemed a general appearance, the amendment repealed such proviso, and in lieu thereof authorized a special appearance for the limited purpose therein indicated. The contention for appellant now is that by this amendment the statute ceased to speak on the question now under consideration, and that it left such question open to judicial decision. We do not think that it can be said that the statute has surrendered its control over this subject. Section 11087 provides that the mode of general appearance to an action may be:

"2. By entering an appearance in the appearance docket or judge's calendar or by announcing to the court an appearance which shall be entered of record.

"3. By taking part either personally or by attorney in the trial of the case."

To plead to the merits of the case is necessarily a general appearance. We have always so held, and we know no author

ity to the contrary, nor does counsel for appellant contend otherwise. Its contention is that, having appeared specially, by permission of the statute, and having suffered an adverse ruling on its challenge to the jurisdiction, it then had the alternative right to plead to the merits of the case, without subjecting itself to the jurisdiction of the court. It is not claimed that Section 11088 contains any affirmative statement in support of the foregoing position. The most that is claimed is that such is the implication of the statute, as amended. We do not think that the statute will bear such construction. On the contrary, it negatives in express terms the very right thus contended for, as indicated by its final clause, which we have italicized above. In *State v. Knapp*, 178 Iowa 25 (1916), we held that, by filing an answer to the petition, and thereby joining issue thereon, the defendant waived his prior special appearance. In several states, such alternative right is recognized, and in quite as many others, it is denied. In virtually all of such states, however, the question pro and con is determined by the respective statutes thereof. In such jurisdictions, judicial decision goes no further than to construe the respective statutes by which the question is controlled. It would serve no useful purpose, therefore, to compare or review these various decisions. Since the enactment of Section 2626, Code of 1873, this state has always been aligned with those states which denied to a defendant the right to plead to the merits of a case under cover of a special appearance. Section 11088 does not change that alignment.

If it were deemed desirable to suggest reasons in support of the statutory policy, these are by no means wanting.

Under the statutes of this state, an original notice has never been deemed "process." Its service is simply one of the methods of conferring jurisdiction over the defendant. It is not indispensable to jurisdiction. If jurisdiction be otherwise acquired, such as by appearance, such notice and the service thereof may be wholly ignored, as immaterial. The challenge in this case is that the original notice was not effectively served upon the defendant. Let it be assumed that the challenge ought to have been sustained. If it had been sustained, it would have devolved upon the plaintiff to effect a legal service. The fact, if such, that the trial court erroneously overruled the challenge, rendered it no

less incumbent upon the plaintiff to effect a legal service. This requisite would rest upon him as long as the defendant remained outside of the jurisdiction of the court. If, in the meantime, the defendant should make a general appearance in such court, then the personal jurisdiction of the court over it would be complete, as a matter of law. The subsequent service of original notice would add nothing to it. The question whether the first service was effective would become wholly moot. Decision upon it could have no effect whatever upon the rights of the parties. It is not so much a question of *waiver* of special appearance or of the service of notice (although such is the argument in many of the cases) as it is of the moot character to which the question of effective service is reduced, when a general appearance is entered. Upon the challenge of the special appearance, the most that the court could have required of the plaintiff was that he accomplish an effective service. The case would remain upon the docket, to await his efforts in that direction. The moment that the defendant put itself under jurisdiction of the court by general appearance, a new status was created. The defendant being in court, it was thereafter useless for the plaintiff to search for it, as being outside of court. The plaintiff could not thereafter ignore such general appearance of the defendant, and he was bound then and there to meet the issue made by the defendant's pleading. It would not then avail the plaintiff to say: "I want a continuance, in order that I may obtain service of original notice upon the defendant." It became obligatory upon the plaintiff at once to meet the issue made by the defendant's pleading, under the rules of procedure. If he then desired delay, he could obtain it only for cause other than the necessity of serving original notice. To sustain the contention of the defendant, we should have to hold that, notwithstanding its pleading to the merits and its participation in the trial, it was, nevertheless, still incumbent on plaintiff to serve notice on it.

Another reason may be suggested, which operates against the position of the defendant. The suit is in equity, and was tried upon its merits, and upon complete issues, including a general denial. The appeal is necessarily from the *decree*. Such, in terms, was the purport of the notice of appeal. It is triable here *de novo* only. Mere errors at the trial are not reviewable, upon such an appeal. We do not, in such a case, reverse on errors and

remand for a new trial. Our finding here becomes a final disposition of the case. The error, if any, of the trial court in overruling the motion to quash service of original notice, as made by special appearance, could be reviewed by us only under an assignment of error. To sustain the assignment would be to reverse an equity case on mere error, and to remand it for a new trial. We have, in a very few exceptional cases, remanded even an equity case to the lower court, with special directions. But such is not the rule. If we should reverse the case on such ground, and should remand the same to the district court, upon what form of procedendo should it be remanded? Should we direct the district court to quash the service of original notice and to defer trial until an effective service was had? Manifestly not. Could we properly reverse the case on this error, and dismiss the plaintiff's case in this court? Such an order would award to the defendant more than it was entitled to in the district court.

We do not overlook appellant's citation of Federal authority on the question under consideration. The contention of the appellant is sustained by practice in the Federal courts. This, however, can be no reason for the abrogation of the statute or for a change in our construction thereof. There is, too, a reason for the Federal practice, which is peculiar to, and consistent with, the nature of Federal jurisdiction. Federal power is a delegated one, and the jurisdiction of Federal courts is subject to the limitations of Federal power. Federal courts are not courts of general jurisdiction, as are the courts of record of the various states. Even a general appearance by a party-defendant in the Federal court does not necessarily confer jurisdiction over him. A Federal court on its own motion challenges its own jurisdiction at the threshold of every case, and the question of jurisdiction is not foreclosed pending the action. Manifestly, therefore, the reason which underlies the attitude of the Federal courts toward the question of jurisdiction is not existent in state courts of record.

Appellant cites for our consideration the case of *Elvin v. Powell*, 179 Iowa 899. The point is made that in that case we reviewed an order by the district court overruling a challenge to the jurisdiction, notwithstanding that the challenging parties had defended the main case upon its merits.

In that case, the appellants were minors, aged 12, 10, and 6,

respectively, and residents of Montana. Personal service of notice had been made upon them in Montana, in accord with statutory method. Their attorney entered a special appearance for them, to challenge the jurisdiction of the court, on the ground that there was insufficient proof of the service of original notice upon them. Manifestly, without such service, the court would have no jurisdiction to appoint a guardian *ad litem*. The district court overruled the challenge, and appointed an attorney as guardian *ad litem*, who thereafter defended the case upon its merits. On appeal here, the attorneys for the appellants presented for our consideration the single question whether the *proof* of service of notice was a sufficient compliance with the law. We held that it was. The argument that such holding on our part carried an implication which sustains this appellant's position is not warranted. If the district court erred in holding the proof of service sufficient, then its jurisdiction failed *in toto*. Such minors could not cure the defect of jurisdiction by subsequent general appearance. That is to say, they could not enter a general appearance, nor could anyone enter a general appearance for them. Jurisdiction could not be acquired over them by a voluntary appearance on their part. It required a formal service of notice upon them, in order to give the district court the initial jurisdiction to appoint a guardian *ad litem*. If such court had jurisdiction to appoint the guardian *ad litem*, then it had jurisdiction to hear the case on its merits. If it had no jurisdiction to appoint the guardian *ad litem*, it had no jurisdiction to hear the case. In the case at bar, the defendant was not under disability to confer jurisdiction upon the court by general appearance.

III. Finally, we think it must be said that, upon this record, the ruling of the court below upon the motion to quash the service is not before us for review. The appeal in express terms  purports to be from the *decree*. The ruling of the court on the motion to quash did not inhere in the decree. The answer filed by the defendant made the issues upon which the case was tried on its merits. Such answer contained no allusion to the motion to quash, nor to the ruling of the court thereon. The ground of such motion to quash made under the special appearance was not included in the answer, as a plea in abatement or

otherwise. The decree appealed from, therefore, involved nothing but a determination of the issues made by petition and answer.

We hold, therefore, that, upon pleading to the merits, the defendant entered a general appearance, and conferred full jurisdiction upon the court, and that, therefore, the question of effective service of the original notice became moot; that Section 11088 afforded no permission to the defendant to plead to the merits of the case and yet withhold itself from the jurisdiction of the court; that the answer of defendant under its general appearance did not plead want of jurisdiction by way of abatement; that the appeal was from the *decree*; that the ruling of the court on the motion to quash did not inhere in the decree; and that the case must be disposed of here *de novo* on the issues as made by petition and answer.

The decree below must, accordingly, be—*Affirmed.*

ALBERT, J., dissents from the second division, and otherwise concurs. All the other justices concur fully.