# CHARLESTON.

**R. E.** BYRNE, *Administrator, Etc. v.* MONONGAHELA WEST
PENN PUBLIC SERVICE CO.

(No. 6309)

Submitted January 15, 1929.   Decided January 22, 1929.

*James A. Meredith, Haymond & Fox,* and *E. G. Rider* and
*Steptoe & Johnson,* for plaintiff in error.

*Hines & Hines,* and *Brown, Jackson & Knight,* for defend-
ant in error.

LIVELY, JUDGE:

Defendant owns and operates an electric power plant and
is a public service utility furnishing light and power to the
inhabitants of the town of Sutton, and elsewhere.   The opera-

tion of its machinery has caused a vibration of the dwelling house of plaintiff's decedent situated 450 feet away from the generating plant. The principal and substantial damage to the house as a dwelling is that the vibrations make it un-inhabitable as such preventing sleep and repose. Some damage of little consequence, resulted from alleged loosening of the joints, breaking of window panes, loosening of plaster, break of some water pipe, rattling of doors and shutters and loosening of a few slates of the roof, according to plaintiff's evidence. The house was erected in 1896 at a cost of $4,000.00, and the two lots on which erected originally cost $100.00 each. There had been very little repair to the house in thirty years. The original roofing, guttering, shutters and plastering remained intact. The house was "painted and fixed up" in 1920. The electric plant was originally owned and constructed by Central Utilities Company which completed it not later than New Year's day 1923, and operated the plant, furnishing light and power to the public until June 1, 1923, when it conveyed the plant and utility to West Virginia and Maryland Power Company, by deed dated June 1, 1923, and delivered July 11, 1923, which operated until it sold to defendant company, by deed dated August 1, 1923, and acknowledged September 28, 1923. It will be noted that the plant had been completed and operated for about eight months prior to the time defendant became owner and continued its operation. In September, 1926, the owner of the dwelling, Mrs. Byrne, died and her administrator instituted this suit to February Rules 1927.

The original declaration charged a total loss of the dwelling in the lifetime of Mrs. Byrne, caused by the vibrations from the plant, to the amount of $15,000.00, the entire value of the property; that the vibrations were caused by negligent operation of the plant in an unlawful manner; and that the plant was negligently and improperly constructed and the foundations thereof insufficient. By amendment the first count charged that defendant purchased the plant instead of constructing it, and thereafter continued its operation with notice of the vibrations and resultant damages to plaintiff's house; and another count was added whereby Central

Utilities Company was charged with negligent and improper construction of the plant, and that defendant purchased and continued operations with knowledge of defective construction.

There was no evidence to support the charge of faulty or improper construction or operation of the plant. On the other hand, the evidence is that it was properly constructed and operated, and no negligence can be imputed to defendant or its predecessors either in construction or operation. The evidence shows that the operation causes the vibrations, for when the machinery starts, and especially during the peak load hours, the vibrations begin and synchronize with the machinery, and when the machinery ceases, the vibrations cease. There is no conflict on the material issue involved, the only conflict being in the extent of damages, of which conflict the jury was the arbiter. Defendant frankly admits that the operation of the plant causes the vibrations due probably to the character of a substratum of earth which cannot be remedied; but says that it is not liable therefor; that if any one is liable its predecessors who built and operated the plant for eight months prior to its purchase are the ones. The evidence does not segregate the times at which the various items of damage occurred, except it is attempted to be shown that various items for damages occurred after the owner's death, but no attempt is made to say what amount of damages resulted therefrom; it is not shown what damage was done, if any, prior to defendant's purchase in September, 1923. The court instructed the jury that it could assess damages at the fair value of the property just prior to the beginning of the plant's operation by defendant company and after its operation, taking into consideration past and future vibrations and shakings and damages therefrom, excluding from such damages, if any, those caused by defendant's predecessor. Defendant moved to strike plaintiff's evidence in chief, and for a directed verdict. The jury found a verdict for plaintiff at $4,500.00; the court refused to set it aside and entered judgment. This writ of error followed.

There are many points of error stressed in argument and briefs. Logically, the first to be considered is the contention

that defendant company is not liable,. for if that contention be well taken, the other assignments of error are moot. This contention is based on the facts, uncontroverted, that Central Utilities Company constructed the plant and began its operation not later than January 1, 1923, and continued its ownership and operation for about eight months when defendant purchased and continued the operation; therefore the right of action for permanent damages accrued to plaintiff against Central Utilities Company for all damages past and prospective, and no liability accrued to plaintiff against defendant for afterwards continuing the operation.

The parties have proceeded on the theory (the correct one) that the damages to the property are permanent, and not recurrent. The evidence sustains the theory of the declaration in that regard. The rule of ascertaining whether damages are permanent and recoverable in one action only, or whether recurrent and recoverable in successive suits is well stated in *Hargreaves* v. *Kimberly*, 26 W. Va. 787, in the ninth point of the syllabus, as follows: ''Where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in its character but of such a character that it may be supposed, that the defendant would remove it rather than suffer at once the entire damage, which it might inflict if .permanent, then the entire damage can not be recovered in a single action; but actions may be maintained from time to time, as long as the cause of the injury continues.'' The defendant here is a public service corporation furnishing light and power to the public and cannot abandon its public service without consent of the public service commission. The power plant is permanently located costing many thousands of dollars. The injury is not abatable. The public service corporation must continue its service. The case is easily distinguishable from *Bartlett* v. *Grasselli Chemical Co.,* 92 W. Va. 445, for in that case the chemical company was purely a private corporation with no quasi public duties, and the distinction is there made as between public and quasi public corporations

and purely private corporations. It is quite well settled by the decisions that if the wrong is of such a character that its continuance is necessarily an injury, and it is of a permanent character that will continue without change from any cause but human labor, and dependent upon no contingency of which the law can take notice, then the damages are original, and according to the weight of authority a right of action at once exists to recover the entire damage, past and future, and one recovery will be a bar to any subsequent action. *Guinn* v. *Ohio River R. Co.,* 46 W. Va. 151, 76 A. S. R. 806; *Watts* v. *N. & W. Ry. Co.,* 39 W. Va. 196, 45 A. S. R. 894, 23 L. R. A. 674. In such cases the statute of limitations begins to run when the plant is constructed and operations begun which cause the damage. *Smith* v. *Pt. Pleasant, etc., Ry. Co.,* 23 W. Va. 451; *Chicago, etc. Ry. Co.* v. *McAuley,* 121 Ill. 160; *Kilcoyn* v. *Chicago, etc.,* 141 Ky. 237; *Schossler* v. *Sanitary District,* 299 Ill. 77; *Turner* v. *Overton,* 86 Ark. 406; *Chicago, etc.,* v. *O'Connor,* 42 Neb. 90. It must be kept in mind that this case here presented is one for permanent injury, for the rights of litigants in such a case are quite different from their rights in cases of recurrent damages where successive suits may be maintained. The right to sue for permanent damages accrued to plaintiff's intestate against the owner and operator of the plant when the operation began, for then the permanent damages began. The evidence of plaintiff is that the vibrations began when the operation began and has ever since continued when the plant is in operation. Of course it was not then incumbent on plaintiff to sue immediately, but unless she had sued within the period of limitation from the beginning of the injury, she would have been barred of all rights of action for damages caused by the vibrations against any one. Cases above cited, and *Magruder* v. *Virginia-Carolina Chemical Co.,* 120 Va. 352; *Worley* v. *Mathieson Alkali Works,* 119 Va. 862. Her right of action having accrued at the beginning of the operation, can she now maintain her suit against defendant who began operating the plant eight months later? That is the precise question under consideration.

Plaintiff's counsel asserts that where a nuisance is begun by the erection of a plant and its operation, and the owner

and operator sells his plant to a vendee who continues the nuisance; then the injured party may sue either for the damages. That proposition is laid down in general terms in the annotator's introductory note to *Roberts* v. *Georgia Railway & Power Co.*, 14 A. L. R. 1089-1094. An inspection of the cases there discussed, and cited in plaintiff's brief, shows that they were cases of recurrent damages for which successive suits might be brought. They involved abatable nuisances. Such, for instance, is *Central Consumers Co.* v. *Pinekert*, 122 Ky. 720, where the predecessor in title to defendant had erected a tank from which water leaked and ran on to plaintiff's abutting property flooding her house, yard and walks; and *Dickson* v. *Chicago, etc. Ry. Co.*, 71 Mo. 575, where the damages were clearly intermittent from a diversion of water made by defendant's predecessor. Such also, for instance, is *Morris Canal etc.* v. *Ryerson*, 27 N. J. L. 457, where a dam was improperly constructed by defendant's predecessor in title and maintained and used by defendant without repairing it. Plaintiff's counsel, however, relies strongly upon *Hyde Park etc. Elec. Light Co.* v. *Porter* (Ill.), 47 N. E. 206. In that case defendant's predecessor in title had constructed the plant, the operation of which caused plaintiff's dwelling house on an adjoining lot to vibrate, and filled the air thereabout with noxious vapors. Defendant's predecessor had only constructed the plant and tested it to see that it would operate, and then sold to defendant which began operating it to the damage of plaintiff. The jury by a special finding found that the property had not been permanently injured by the erection and testing of the plant, and that such injury began when defendant commenced its operation. But the opinion says that "had it been otherwise, we would not be *inclined* to hold that plaintiff could not recover." This was not necessary to the decision of the case and is dictum to sustain which no authority is cited. Probably had the court been called upon to decide the point, after argument and authority cited thereon, it would have followed its "inclination." This is the only case in point to which our attention has been directed which sustains the proposition that in a case of permanent damages the successor in title of the person who caused those damages by construc-

tion and operation of the plant, is liable for a continuance of the operation, there being no question of improper construction or operation involved.

On the other hand, we have our case of *Guinn* v. *Ohio River Ry. Co.,* 46 W. Va. 151, above cited, which holds that where a railroad builds its road in a street, which road injures access to and damages a lot abutting on the street, the damages are original and permanent, and the company building the road is the one liable, and not a subsequent lessee who operates it. In that case the tracks were laid by Huntington & Big Sandy Company which operated them, and subsequently leased the road to Ohio River Railway Company which continued the operation. It is argued that this railroad case is distinguishable from the instant case in that the damage to Gwinn's lot and mill thereon was caused by the construction of the tracks and not by operation of cars thereover. The damage to Gwinn's property by the tracks would have been inconsequential if those tracks had never been used. *L. & N. Ry.* v. *Orr* (Ky.) 15 S. W. 8. We can see no difference in principle between the two cases. In *Bizer* v. *Ottumwa Hydraulic Power Co.,* 70 Iowa 145, the question was squarely at issue. There Ottumwa Water Power Company constructed a dam and embankment of a permanent character which permanently injured plaintiff's land. Later in 1882 defendant purchased the dam, water power and improvement, and continued the operation. Some years later plaintiff sued defendant, and the court held that the damages being permanent but one action could be maintained and the original owner and operator who caused the damage was *alone* responsible, and *not* the vendee who had done no act of which plaintiff could complain except to maintain the dam as originally constructed. The principle was recognized in *Bunten* v. *Chicago, etc., Ry. Co.,* 50 Mo. App. 414, wherein the opinion says: ''And in such case (permanent damages) the party erecting the nuisance (not his grantees or successors) is alone liable. *Bisor* v. *City of Ottumwa,* 70 Ia. 146; *C. & A. Ry. Co.* v. *Maher,* 91 Ill. 312. This doctrine should be understood with this qualification: If the nuisance is on one's own land and does not, of itself, work the injury when erected, then the

limitation will not begin to run until the first injury happens, and he who owns it or maintains it *at that time* will be liable", citing authorities. And in *Hayes* v. *St. Louis etc. Ry.*, (Mo.) 162 S. W. 266, the opinion in discussing permanent damages (p. 269) says, the whole injury arises generally from the completion of the work, and is subject to one action which must be brought within the period of limitation from the erection of the nuisance; and that "in such case the party erecting the nuisance (not his grantees or successors) is alone liable," thus quoting and approving the *Bunten* case. It may be observed in passing that it is quite generally held that the owner of the property permanently injured can alone maintain suit for the injury if it become permanent while he owned the property. His vendee cannot maintain suit for the permanent injury. *Chicago* v. *Loeb,* 118 Ill. 203.

We are bound by the principle announced in *Gwinn* v. *Ohio River Ry Co.*, *supra*, accentuated by the decisions above cited, and hold that plaintiff's suit is properly against the corporation which erected the plant and operated it and who caused the permanent damages here complained of; and that defendant company is not liable for this permanent damage caused by another. The motion to direct a verdict for defendant should have been sustained.

*Reversed; new trial awarded.*