JEANETTE FRIEDMAN, Appellant, v. CITY OF FOREST CITY, Appellee.

No. 47014.

(Reported in 30 N. W. 2d 752)

114

FEBRUARY 10, 1948.

Loth & Melton, of Fort Dodge, for appellant.

R. C. Brown, City Attorney, John A. Senneff, of Mason City, and H. R. Duncan, of Des Moines, for appellee.

OLIVER, J.—Some language in plaintiff's brief relative to the trial judge and his conduct is improper. The record in this case shows the charges are not well founded. But complaints of the manner in which a judge conducts any trial should always be couched in respectful language.

Since 1930 plaintiff and her husband have occupied a dwelling in Forest City purchased and owned by her. Most of the property in the immediate vicinity is industrial. In 1939 Forest City constructed and has since operated a municipal electric plant in the block across the street from plaintiff's home. Alleging the vibration and noise from the Diesel engines in this plant damaged her home and interfered with its comfortable enjoyment plaintiff brought this suit against the city in 1943. It was tried to a jury as an action for damages

and resulted in verdict and judgment for defendant and this appeal.

The action was started in equity. Plaintiff's First Substituted Petition, alleges in part that: the large high-speed Diesel engines which generate the electricity make great noise and set up strong vibration which shakes the ground and plaintiff's home, distorting and cracking it and impairing its comfortable use; that the physical injury to the building is progressive and constantly increasing; that these conditions are permanent in that they will continue as long as defendant is permitted to use the Diesel engines and that defendant will not discontinue such use unless compelled to do so by the court; that the damage sustained up to this time is $4,000; that unless the nuisance is abated by the court it will be permanent and the damage, past, present and future will be $8,000.

The prayer is for an injunction abating the nuisance and $4,000 damages to the time of abatement, or if abatement is refused, $8,000 for past, present and future damages.

In compliance with an order of court requiring her to separate her petition into divisions or counts plaintiff filed her Second Substituted Petition in Equity. Division I alleges: that although there was no necessity therefor, the city determined to and in 1939 did construct under the Simmer Law (section 397.9 et seq., Code, 1946) and operate a municipally owned electric plant; that said plant includes three Diesel engines which operate at high speed, with great noise and set up a strong vibration which shakes the ground and plaintiff's home, distorting, damaging and cracking it, which injury is progressive and increasing, and impairing its comfortable enjoyment; that in 1941 plaintiff demanded that the city terminate the nuisance and the city advised plaintiff's attorney the elimination of the difficulty would cost a substantial sum and that no one locally knew what should be done; that later, its engineering firm was preparing to make recommendations and still later, that materials could not be procured and nothing would be done.

Paragraph 16 alleges "the nuisance can and should be abated, and the plaintiff desires such abatement; but that such

abatement may entail the temporary or even permanent cessation of the use of the engines now in the plant."

Division I prays such order of injunction and abatement as will end the nuisance, judgment for damages to the time of abatement for $4,000 and for other and further equitable relief. Division II adopts the averments of Division I except paragraph 16, alleges that if the nuisance be deemed, held or made permanent, it diminishes the value of her property $8,000 for which judgment is prayed "in the event plaintiff shall be compelled to accept relief without abatement."

Upon motion of defendant, plaintiff was required to elect between Division I which sought injunction and damages to the time the nuisance should be terminated, and Division II which sought permanent damages. Plaintiff elected to stand on Division II. Later, upon motion of defendant the court ordered the cause transferred from equity to the law side of the calendar. Defendant's answer, filed thereafter, admits the structure complained of is permanent in nature, denies it damages plaintiff's property, avers the engines are devoted to public use and asks that if it be found plaintiff's property has been damaged, the matter be treated as permanent and original damages, and the entire amount be determined for all time.

The jury was instructed that if plaintiff had proved the existence of a nuisance it should assume the nuisance was permanent, and allow plaintiff for all past, present and future damage proven.

█ I. Although plaintiff pleaded and elected to try her case upon the theory of permanent nuisance she now contends she could not properly claim permanent damages from the nuisance pleaded by her. She states Ryan v. City of Emmetsburg, 232 Iowa 600, 606, 4 N. W. 2d 435, and Wesley v. City of Waterloo, 232 Iowa 1299, 1302, 8 N. W. 2d 430, hold "this nuisance is temporary." In the cited cases the invasions were by gases and odors from plants installed for the purpose of disposing of sewage in a sanitary manner and without objectionable odors and which do so when functioning properly. The nuisances were readily abatable and it was the duty of the cities to abate them. There was no physical damage to the

property. As stated in Vogt v. City of Grinnell, 123 Iowa 332, 334, 98 N. W. 782, 783:

"The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream, instead of [first] * * * rendering the sewage innocuous. * * * A nuisance cannot be permanent which can be abated without unreasonable expense by the party creating it."

Although other courts are divided upon the proposition our decisions have uniformly held invasions by odors, etc. from municipal sewage disposal to be temporary in nature and abatable.

The petition in the case at bar alleges progressive and constantly increasing physical injury to plaintiff's home as well as interference with its comfortable use, by noise and vibration from the normal operation of Diesel engines in the municipal electric plant. The alleged wrong is in the type of plant, mainly in that it is powered by high-speed instead of low-speed Diesel engines. There is no charge of improper operation. Presumably the lawful structure, its operation by the city as a public utility and the alleged invasion will continue indefinitely. Usually the operation of such a plant will not be enjoined. Under the circumstances plaintiff could properly claim permanent damages.

II. Plaintiff assigns as error the order requiring her to separate her petition into divisions. That is not of sufficient importance in this case to require its consideration. Error is also predicated upon the order transferring the cause to the law side of the calendar. That order was technically correct because it was made after plaintiff had elected to proceed upon Division II of her petition which was merely an action for damages.

Plaintiff's principal complaint is based upon the preliminary order which required her to elect between past and present damages plus injunction as pleaded in Division I and past, present and future damages sought in Division II. We have held this form of pleading proper even though the counts were technically inconsistent. Mortenson v. Hawkeye Cas. Co.,

234 Iowa 430, 12 N. W. 2d 823, and citations; In re Estate of Flaugher, 232 Iowa 520, 5 N. W. 2d 821. They were not fatally repugnant in this case. None of these decisions was a nuisance case. However, there are like holdings by other courts in nuisance cases. Green v. Arnold, 25 Tenn. App. 67, 150 S. W. 2d 1075; Oklahoma City v. Page, 153 Okla. 285, 6 P. 2d 1033; Follett v. Brooklyn El. R. Co., 91 Hun 296, 36 N. Y. Supp. 200. We conclude the order requiring election before trial was erroneous.

III. However, defendant contends the orders requiring election and transferring to the law side of the calendar were not prejudicial because the suit was merely an action for damages properly triable at law only.

Under our practice an action to enjoin a nuisance and to recover damages therefor may be brought either in equity or at law. Section 657.1, Code, 1946; Rules of Civil Procedure, Rule 320; Pisny v. Chicago & N. W. Ry. Co., 207 Iowa 515, 221 N. W. 205, 222 N. W. 609; Miller v. Keokuk & Des Moines Ry. Co., 63 Iowa 680, 16 N. W. 567; Gribbin v. Hanson, 69 Iowa 255, 28 N. W. 584. A plaintiff may choose either forum and secure the same relief. However, equity is not the proper forum for an action for damages alone. Nor should a plaintiff be permitted to deprive the opposing party of the right to jury trial, by instituting in equity an action for damages coupled with a claim for injunction which is merely colorable.

Prosser on Torts (1941) 549, section 71, refers to the confusion surrounding the word nuisance as an impenetrable jungle and we have frequently mentioned apparent conflicts in the language of some of our decisions. IV Restatement of the Law, Torts, 216, points out that the term nuisance is used in several senses: (1) as denoting human activity or a physical condition of land that is harmful or annoying (2) as denoting the harm caused thereby, and (3) as denoting both the fact situation and the legal liability arising therefrom. Hence that work uses the word nuisance as little as possible.

Section 930, IV Restatement of the Law, Torts, 665, states in part:

"DAMAGES FOR FUTURE INVASIONS. (1) Where, by the

maintenance of a structure on his own land or by acts and operations thereon, a person causes continuing or recurrent tortious invasions of the land of another, the other is entitled to recover for future invasions if, and only if, it appears that (a) the situation will continue indefinitely and (b) it is incident to (1) an enterprise affected with a public interest, the operation of which as presently operated will not be enjoined * * *."

The comment to said section, at page 666, states:

"Damage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service and which nominally have the right of taking land by eminent domain. * * * If the damage results from some minor feature of construction or management, so that it could be averted at slight expense, the normal remedy of successive actions for past invasions, or relief by injunction, would alone be available, as is also true where the harm results from an improper and unnecessary method of operation. But if the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable by injunction, and the desirability of granting the injured person complete compensation for past and future invasions is apparent.

"Moreover, the public interest, which actuates the courts to deny an injunction calculated to interfere with an essential public service, requires also that such a utility enterprise be permitted, when sued for past invasions, to have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions. This is most obviously true when the damage is a necessary incident of the lawful operation of the enterprise, in which case the allowance of full damages has the effect of the exercise of the power of eminent domain. Even where, however, the damaging feature cannot be said to be authorized by law, but it is incident to the use of the existing plant, and not avoidable by reasonable effort or expense, public convenience requires that the plaintiff submit to be compensated completely, once for all."

 Actions for injunction are not governed by the same rules as suits for damages and denial of injunctive relief is not always a precedent for denial of relief by way of damages. Id. pages 223, 224.

Restatement of Torts states the right to enjoin a nuisance established in such a case is for the court to determine upon a balance of individual and public interests. The text, Volume IV, page 693, states some of the factors to be considered in determining the appropriateness of injunction are the relative hardship likely to result to defendant if injunction is granted and to plaintiff if it is denied, and the interests of third persons and of the public.

Defendant relies upon such cases as Bartlett v. Grasselli Chemical Co., 92 W. Va. 445, 115 S. E. 451, 27 A. L. R. 54, Rhodes v. City of Durham, 165 N. C. 679, 81 S. E. 938, and Boise Valley Constr. Co. v. Kroeger, 17 Idaho 384, 105 P. 1070, 28 L. R. A., N. S., 968.

The Grasselli case, an action for damages, states such functions and operations cannot be enjoined because of their public nature. Byrne v. Monongahela West Penn Pub. Ser. Co., 106 W. Va. 594, 597, 146 S. E. 522, 524, which involves damages to a dwelling house from vibrations of an electric power plant, states:

"The defendant here is a public service corporation furnishing light and power to the public and cannot abandon its public service without consent of the public service commission. The power plant is permanently located costing many thousands of dollars. The injury is not abatable. The public service corporation must continue its service."

 These decisions indicate the weight given by some courts to the factor of public interest. We are unwilling to hold that the operation of a municipal electric plant will never be stopped by injunction in such cases, but we are satisfied such injunction would be proper only under extreme circumstances. What we have just said does not refer to the correction of some minor feature of construction which could be easily remedied, or improper operation.

In this connection we pointed out in Daniels v. Keokuk Water Works, 61 Iowa 549, 554, 16 N. W. 705, 707, that each case must be determined by its own special circumstances, and that if defendant was enjoined even for a time the result might be disastrous to the public and we stated:

"We think it may be safely assumed that the rule in equity is, that where the damages sustained can be admeasured and compensated, equity will not interfere where the public benefit greatly outweighs private and individual inconvenience."

It may be observed that although payment by a public utility of damages for future invasions has the effect of the exercise of the power of eminent domain, the two are not the same. Also, where the defendant's conduct amounts to a wrongful actual seizure injunction will frequently issue in cases where it would otherwise be refused. Scott v. Price Bros. Co., 207 Iowa 191, 196, 217 N. W. 75, holds an injunction will issue to protect the constitutional and statutory remedy of condemnation. See, also, Beers v. Gilmore City, 197 Iowa 7, 196 N. W. 602. For a fuller discussion of these propositions see IV Restatement of the Law, Torts, 714. In the case at bar there was no wrongful seizure of plaintiff's property and the failure of the city to condemn such property casts upon it no imputation of bad faith.

The denial of equitable relief will not necessarily entitle a defendant to dismissal or transfer to the law side of the calendar. Id. 771, section 951, states in part:

"* *.* And where an injunction is denied because of such factors as relative hardship or a countervailing public interest, the courts frequently retain the case for the assessment of the appropriate measure of damages."

See Stovern v. Town of Calmar, 204 Iowa 983, 216 N. W. 112; Parsons v. City of Sioux Falls, 65 S. D. 145, 272 N. W. 288; City of Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334, 53 S. Ct. 602, 77 L. Ed. 1208; Kinsman v. Utah Gas & Coke Co., 53 Utah 10, 177 P. 418; E. I. Du Pont De Nemours & Co. v. Temple, 4 Cir., Va., 272 F. 456.

In connection with the foregoing quoted recitation, Restatement of Torts, page 772, states:

"In States where law and equity procedures are kept separate, however, a limitation is sometimes imposed that damages will not be awarded in lieu of injunction unless the plaintiff originally sought an injunction in good faith. Good faith is not present if the plaintiff knew or should have known that no grounds for injunction existed, or if it appears that the sole purpose was to escape from jury trial on the damage issue. In fusion jurisdictions absence of good faith by the plaintiff may affect the question whether the case should go on the jury calendar or not."

 This is no more than an application of the rule that the coupling of a merely colorable claim in equity with an action cognizable at law will not entitle a plaintiff to try the cause as an equity action. Gorman v. Joens, 189 Iowa 845, 179 N. W. 138; Consolidated Constr. Co. v. Begunck, 233 Iowa 463, 473, 9 N. W. 2d 390, and citations. In the language of some of the decisions, one may not plead himself into equity.

Whether an injunction was sought in good faith or whether it appears the sole purpose was to escape from jury trial upon the damage issue are questions which may not always be determinable before trial of the injunction issue. However, the record here is sufficient to enable us to determine these matters.

There are only two other residences in the block where plaintiff lives. Plaintiff testified, "the people who live immediately east [of us] work in the plant, so naturally he would not complain." The owner of the other home testified the operation of the plant did not disturb him or damage his property. Nor was there any claim the noise and vibration substantially interfered with the comfortable use of property other than plaintiff's residence. Hence there was no probability defendant would be faced with other suits for damages involving burdensome amounts.

It is fair to infer plaintiff knew this and knew of defendant's right to elect to have its liability, if any, for past, present and future damages determined in one action. She knew or should have known also that the closing of the plant

by court order in her action was almost beyond the realm of possibility. Nevertheless, she pleaded in her first substituted petition that defendant would not discontinue the use of the Diesel engines (the heart of the plant) unless compelled to do so by the court. That was softened somewhat in her second substituted petition which states the "abatement may entail the temporary or even permanent cessation of the use of the engines now in the plant."

This was no minor feature of construction which could be corrected at slight expense. It was a substantial, if not the main, feature of the plan of construction. Although no court could be expected to grant her such relief in lieu of damages, she pleaded, in effect, that nothing less would suffice.

We have hereinbefore pointed out that the alleged wrong was in the type of plant and there was no charge of improper operation. In view of the emphasis in plaintiff's pleadings of the difficulties and expense of correcting the alleged defects in the plant, the suggestion that the court might have granted her less injunctive relief than she demanded is beside the point.

Plaintiff pleaded that the primary relief she sought was injunction plus damages to the time of abatement and she prayed for permanent damages only "in the event plaintiff shall be compelled to accept relief without abatement." However, when required to choose between them, she elected to demand permanent damages.

██ The record satisfies us plaintiff did not originally seek an injunction in good faith within the definition above quoted, and that her sole purpose was to escape from jury trial on the damage issue. Although the order requiring her to elect was erroneous, the result of the several orders and her election was the trial of her case as an action at law for damages. This was proper. That plaintiff reached the proper forum prematurely affords her no ground for complaint. Absence of prejudice is further emphasized by defendant's election and the court's instruction, that if she had proved the existence of a nuisance she was entitled to all past, present and future damages proven.

██ IV. In argument to the jury, counsel for plaintiff said:

"In view of the whole record in this case, it is my claim that the council themselves must be conscious of the fact that we have a substantial claim. We think—we can see no other reason for their not making payment of it than this: they are public officers; they have a public responsibility; and for them to pay a large sum of money without our coming in and showing to the public in open court, they might be criticized for paying that much——." Defendant objected, stating: "It is not proper to say they would pay the money except that they might be criticized. The Court: Counsel will confine himself to an argument on the facts."

The error assigned is:

"The court erred in sustaining defendant's objection to plaintiff's argument that the jury might infer, from failure of the mayor or councilmen to testify, that they were conscious of the merits of our claim."

Counsel for plaintiff is mistaken as to what he said in argument, the objection thereto and the ruling of the trial court. Control of arguments is for the trial court in the exercise of its judicial discretion. Under the circumstances shown by the record the admonition was proper.

V. Plaintiff assigns error to another ruling limiting argument. The record shows neither the argument nor the ruling. It shows merely the recollection of plaintiff's counsel relative thereto, which was later dictated into the record. Plaintiff contends the approval of the record by the trial court proves her counsel correctly remembered and restated his argument and the ruling of the trial court thereon. With this we are unable to agree. The certificate covers merely what the record shows counsel for plaintiff stated was said, as distinguished from what actually occurred. The record is insufficient as a basis for the review of the assigned error. See In re Will Contest of Soderland, 239 Iowa 569, 30 N. W. 2d 128; Connelly v. Nolte, 237 Iowa 114, 21 N. W. 2d 311.

VI. One Jennings was the engineer at the electric plant for about the first year. Plaintiff testified that during this period, at her request, he came over to her house five or six

times to investigate her complaints. By a writing marked Exhibit A, she offered to prove Jennings told her that "(a) the plant was making an unusual and unexpected amount of vibration; (b) that he believed that it was due to some construction difficulty in the plant which could be fixed; (c) that he would take it up with the city and felt sure that some arrangements could be made to stop or remedy the condition; and (d) that they would like to try to see what could be done and (e) that the situation was one they did not expect; and (f) which should be remedied." This was objected to as hearsay, and a statement of an employee not binding upon defendant, it not being shown that Jennings had authority to act in the matter. The court sustained the objections. The court had already pointed out that plaintiff had been permitted to show she made complaints. Hence the question of knowledge or notice to the City is not involved.

To make the declarations of an agent admissible in evidence against his principal they must have been made while he was engaged in the performance of his agency and must have related to the subject matter thereof. Vincent, Albin & Strahl v. Hines, 198 Iowa 1224, 1232, 1233, 200 N. W. 1; Muntz v. Travelers Mut. Cas. Co., 229 Iowa 1015, 1020, 295 N. W. 837; Carpenter v. Chicago, R. I. &. P. Ry. Co., 126 Iowa 94, 97, 101 N. W. 758; Sweatland v. Illinois & Mississippi Tel. Co., 27 Iowa 433, 443, 458, 459, 1 Am. Rep. 285; Walters v. Iowa Elec. Co., 203 Iowa 467, 212 N. W. 886; 2 Jones, Commentaries on Evidence (1926), 1749, section 946. Nor are the acts and declarations of an agent generally admissible to prove his authority. John Gund Brewing Co. v. Peterson, 130 Iowa 301, 306, 106 N. W. 741; Klassie v. Holt, 233 Iowa 826, 10 N. W. 2d 540.

A municipal agent has been defined as one employed and entrusted by a municipality with discretionary power to represent it in dealings with third persons. A municipal employee is one engaged in the service of the municipality. An employee of a municipal corporation being engaged in the performance of a service purely ministerial is not an officer or agent of the municipality, and cannot place it under obligation or liability by assuming to act as such. Cooley, Handbook of Municipal

Corporations (1914), 231, section 69. Nor are the declarations of public officers admissible against the public corporation unless related to and made in connection with official business in which such officers are at the time engaged. Yordy v. Marshall County, 86 Iowa 340, 342, 53 N. W. 298; Escher v. Carroll County, 146 Iowa 738, 740, 125 N. W. 810.

 There was no showing that the council had instructed Jennings to investigate the condition of plaintiff's home or other properties or to make investigations, statements or recommendations of the nature of those sought to be shown. Apparently Jennings was employed to work for the City, not to talk for it. The objections were properly sustained.

Defendant contends also the asserted declarations were merely conclusions and opinions. It quotes from 1 Jones on Evidence, Civil Cases, Fourth Ed., 630, 633, section 344:

"Declarations of conclusions or opinions, even though they may have been uttered under conditions which would authorize their introduction if they were statements of facts, are not admissible as part of the res gestae."

See, also, Sweatland v. Illinois & Mississippi Tel. Co., supra; Walters v. Iowa Elec. Co., supra; 31 C. J. S., Evidence, section 343. Having already determined the evidence was properly excluded on other grounds, we merely observe that most of the statements in Exhibit A are in this category.

 VII. The assigned errors considered in this division are similar to those just discussed and various authorities cited in each division are applicable also to the other.

In 1941 plaintiff's attorney had appeared before the city council, made complaint and apparently threatened suit. At the trial plaintiff called Mr. Haugland, the city clerk, as a witness. Over defendant's objections the court admitted the minutes of the 1941 meeting which recited the claim made by plaintiff's attorney. The witness was permitted to testify also that shortly thereafter the city procured a representative of the engineering firm which had supervised the construction of the plant to investigate the matter. The minute book did not show any meeting of the council at which this engineer reported

nor that any report was accepted or made. Defendant's objections to questions concerning an assumed letter or written report from the engineering firm to the City were sustained.

Plaintiff then offered to prove by the witness that the engineer came to Forest City and investigated the Friedman claim; "and upon the basis of that proof, plaintiff would then re-offer Exhibit 'A'; the engineer's authority to make admissions of fact with respect to the matter .entrusted to his investigation would be competent as an admission against the city." Plaintiff did not assert the engineer had made any admissions or that the witness would so testify. Without such foundation the rejection of this offer was clearly proper.

Counsel for plaintiff then stated:

"Next, with reference to the report of the engineer himself, of course we have no copy of it and it is a little hard for me to offer proof of what it is, but in good faith I believe the report contains a description of the situation substantially as our offer of proof, Exhibit 'A', outlines it; and we propose to follow up the questions we did ask by asking Mr. Haugland to produce the report made by the engineer after his investigation, and if it does contain such admissions we propose to offer it."

An objection to this offer was sustained.

The four errors assigned are in excluding evidence of the report and statement (1) that the plant was making an unusual and unexpected vibration (2) due to construction difficulty which could be fixed (3) that the situation was not expected, and (4) should be remedied.

Assuming the engineering firm made a report, it was a private document, not open to public inspection. Nor would the statements in such report bind the city. II Dillon on Municipal Corporations, Fifth Ed., section 562, states:

"An admission by a [municipal] corporation of a fact or of a liability, duly and properly made, is, of course, evidence against it. But a municipal corporation, by accepting, that is, receiving the report of a committee of inquiry, does not admit the truth of the facts stated therein; and such a report, though

accepted by a vote of the corporation, is not admissible in evidence against it."

It may be noted that in this case the report was by an employee and not by an official committee. Moreover, the record shows the investigation was made for the information of the city in view of the threatened litigation.

Travelers Ins. Co. v. Jackson, 201 Iowa 43, 47, 206 N. W. 98, 99, states:

"That the applicant was not entitled to the production of private letters or communications or memoranda or opinions or findings by Drs. Lamb and Middleton to the insurance company as their employer, is quite clear. None of such items would be admissible as instruments of evidence, though the applicant might gain practical advantages in the trial of the case because of their perusal. But the statute cannot be used to such an end."

Plaintiff asserts the cited case supports her contention because the court required the production of a certain laboratory analysis. In that case there was a dispute whether the analysis of organs from a human body was made under an agreement that the results should be communicated to physicians on both sides who had jointly made the post-mortem examination and autopsy. Under the circumstances the court resolved the doubt in favor of the order of the trial court.

In Atchison, T. & S. F. Ry. Co. v. Burks, 78 Kan. 515, 523, 96 P. 950, 952, 18 L. R. A., N. S., 231, the court states:

"It can make no difference in the application of the rule whether the investigation and report are made before an accident has occurred, with a view of making repairs if necessary, improving the equipment or service or preventing accident, or whether they occur after an accident, with a view of ascertaining the circumstances or cause. The commission of the inspector is the simple obtaining of information upon which the company may act, and when he makes a report of what he has observed the corporation does not speak through him as in cases where a principal sends his agent out to transact his business with the public, so that whatever the agent may say or do in

the prosecution of the enterprise while he has it in charge is the speech and act of the principal. The report is only a recital of the inspector's observation, and does not commit the company to its truth until it is taken up and adopted as the position of the company by someone having authority to bind it in such matters. In litigation between the company and a third person the inspector is a competent witness as to what he saw, but the existence of the state or condition in controversy cannot be proved against the company by his mere declaration concerning it."

The decision also points out that there might be several reports which might disagree. "What is the truth, and which of these reports, made by agents designated for the [that] purpose, and who therefore act in the 'line of duty,' are admissions by the company of the state of facts narrated?" The decision then refers to the following statement in Carroll v. East Tennessee, Va. & Ga. Ry. Co., 82 Ga. 452, 475, 10 S. E. 163, 165, 6 L. R. A. 214:

" 'It surely cannot be sound law to hold that by collecting information, whether under general rules or special orders, and whether from its own officers, agents and employes or others, a corporation acquires and takes such information at the peril of having it treated as its own admissions, should litigation subsequently arise touching the subject-matter.' "

In Palmer v. Hoffman, 318 U. S. 109, 63 S. Ct. 477, 87 L. Ed. 645, 144 A. L. R. 719, a record concerning an accident was held not admissible under the federal statute because it did not relate to the management or operation of the business as such. United States ex rel. Tennessee V. A. v. Neal, 45 F. Supp. 382, 383, states reception of reports of a geologist to his employer would violate more than one rule of evidence:

"An insuperable barrier would be the hearsay rule, and moreover the oral statement, letter or report the answer seeks to bring forth could at most have been the act of an agent dealing with his principal, and without a semblance of conclusiveness, and certainly not an admissible declaration against interest." Citing authorities.

We hold that neither the report of the engineer nor any admissions therein would be admissible against defendant. Defendant's objections were properly sustained. We need not determine whether the procedure adopted by plaintiff to secure an inspection of such papers was correct.

VIII. Plaintiff testified:

"My mother could not stand it in the house—other members of the family have come to stay and did not stay—Mr. Friedman's cousin just stayed overnight—people who worked for us have quit—I talked to them as to the reason—I have heard people in my home complain about the noise and inconvenience—this prevents me from using my home as formerly in that you usually end up talking about this vibration, no matter where the company will sit, we are talking about how you can't stand this—I can't have any of my folks come up—they can't stay at the house."

These answers were stricken either as the result of objections made before the witness answered or by motions after she answered. Plaintiff also offered to prove the cousin who stayed one night stated the reason he left was that he could not sleep there with the noise and shaking and her mother complained of the noise and vibration and said that was the reason she did not care to stay. The offer was rejected. Plaintiff assigns eleven errors to the foregoing rulings. Apparently many of the answers were excluded because they were merely conclusions, opinions, argumentative or immaterial. It is sufficient to say various rulings were proper upon one or more of those grounds. The real question is whether plaintiff's testimony of what others told her was admissible.

Before discussing that proposition we will refer to plaintiff's contention that the trial court refused to permit her to show the inconvenience and discomfort suffered by her and her family. There is no basis for this contention. Both plaintiff and her husband testified concerning their own inconvenience and discomfort and to some extent concerning others. A lady who had worked in the home testified about the conditions and her own discomfort, as did also a person who occasionally

stayed there. Another person who had been in the home many times testified the condition would affect the sleep and rest of an ordinary person. Another who had visited there testified about the conditions and stated, "If I lived in that house, I could not stand it, this constant jerking all the time." None of this testimony was excluded.

The issue may be narrowed to possibly one or two answers which were stricken and the offer to prove by plaintiff that the cousin stated the reason he left was he could not sleep with the noise and shaking and her mother said that was the reason she did not care to stay. Plaintiff contends these statements were verbal acts which accompanied the act of leaving. The record does not show when the alleged declarations were made.

Pierson v. Boston El. Ry. Co., 191 Mass. 223, 234, 77 N. E. 769, 774, cited by plaintiff, holds admissible statements of customers of a restaurant accompanying their act of leaving. These in substance were, let us get out of here and eat where we can talk and hear ourselves. However, the decision distinguishes Wesson v. Washburn Iron Co., 13 Allen 95, 90 Am. Dec. 181, 183, in that the declarations in the Wesson case were "declarations of a previously existing fact or state of things." The Wesson case was an action for damages to a hotel by jarring and shaking. Plaintiff offered to show that guests, who came down late at night with their baggage, said they could not stay because they could not sleep on account of the jar. The decision holds this offer of proof was properly refused.

Plaintiff contends the evidence of the statements was admissible under an exception to the hearsay rule which, in proper cases, permits evidence of a declaration by another of a present existing motive or reason for action. VI Wigmore on Evidence, Third Ed., 90, 91, section 1729; Goodale v. Murray, 227 Iowa 843, 857, 289 N. W. 450, 126 A. L. R. 1121. However, in the cited case the state of declarant's mind was the very question in issue.

In the case at bar the issue was the existence of the alleged noise and vibration and the damage therefrom. The evidence of the declarations was offered to prove the fact of the existence of the nuisance. Plaintiff concedes this. However, she asserts it also shows the existence of discomfort and the effect of the

nuisance upon the value of the property. If these contentions be assumed correct, the declarations would be merely evidence of the fact of the existence of the noise and vibration and the damage therefrom. It is clear the statements were wanted, not as evidence of the motives of the declarants but as evidence of the facts recited as furnishing the motives.

The situation here is analogous to that in Buckeye Powder Co. v. E. I. Du Pont De Nemours Powder Co., 248 U. S. 55, 65, 39 S. Ct. 38, 40, 63 L. Ed. 123, 128, a decision written by the late Justice Holmes, which states:

"Several exceptions were taken to the exclusion of statements by third persons of their reasons for refusing or ceasing to do business with the plaintiff. We should be slow to overthrow a judgment on the ground of either the exclusion or admission of such statements except in a very strong case. But the exclusion in this instance was proper. The statement was wanted not as evidence of the motives of the speakers but as evidence of the facts recited as furnishing the motives. Lawlor v. Loewe. 235 U. S. 522, 536 [35 S. Ct. 170, 59 L. Ed. 341]; Elmer v. Fessenden, 151 Mass. 359, 362 [24 N. E. 208, 5 L. R. A. 724]."

The exclusion of the evidence of the statements in question was not error.

IX. Burdette Anderson, a member of the city council since 1941, was a witness for defendant. He testified only that in 1937 his company insulated plaintiff's home, and he then noticed some cracks in the ceilings of rooms on the second floor. In his cross-examination plaintiff sought to show Anderson was present and said nothing when plaintiff's attorney appeared before the council in 1941 to complain of the noise and vibration from the light plant, in the course of which the attorney stated the house was being cracked and damaged. The trial court sustained objections to this line of questioning.

An admission may be inferred from silence where the silence is improper or unnatural; and a definite statement of fact in connection with a failure to reply thereto, is, under certain conditions, allowed in evidence as an admission of the truth of the statement. 31 C. J. S., Evidence, section 294. However,

such evidence should be received with caution and is incompetent if the situation or conditions are not such that the natural and reasonable inference from such silence is an admission of the truth of the statement. Doherty v. Edwards, 227 Iowa 1264, 1272, 290 N. W. 672. The inference may be safely made only where no other explanation is equally consistent with silence. I Wigmore on Evidence, Third Ed., section 107. See, also, Smith v. American Stores Co., 156 Pa. Super. 375, 40 A. 2d 696, 698.

Preliminary questions relating to such evidence are for the court, such as the question whether the circumstances are such as to call for a reply. 31 C. J. S., Evidence, section 296; Pulver v. Union Inv. Co., 8 Cir., Minn., 279 F. 699, 705.

Anderson testified he saw cracks in the ceiling in 1937. Apparently, he had not been inside the house subsequent to 1937. His testimony was not inconsistent with the charge that "the house was being cracked and damaged" in 1941. He did not testify about that and it is a fair inference he had no personal knowledge whether it was true. This would afford a satisfactory explanation for a failure to reply. We conclude the circumstances hypothesized in Anderson's cross-examination did not call upon him to enter into a disputation with plaintiff's attorney at the 1941 council meeting. Hence, the court properly sustained objections to the questions.

X. Various other errors involving rulings upon evidence are assigned. We have examined these. They are either not well founded or are not of sufficient consequence to require a reversal.

The instructions were not unfavorable to plaintiff. Reference has already been made to the instruction that if plaintiff had proved the existence of a nuisance the jury should assume the nuisance was permanent, and allow plaintiff for all past, present and future damage proven. Plaintiff complains of the failure to give a requested instruction upon the measure of damages. The requested instruction was given in substance as were other instructions requested by plaintiff. Furthermore, the instructions required the jury to return a verdict for plaintiff in some amount if it found the operation of the plant con-

stituted a nuisance and that the noise and vibration had or would substantially injure plaintiff's dwelling or interfere with its use and enjoyment by plaintiff and her family. The verdict for defendant was a finding that the existence of the nuisance had not been proved. In view of that finding the errors assigned to the instructions upon the measure of damages would not afford grounds for reversal and need not be considered.

Plaintiff's contention that the verdict for defendant was unwarranted does not require extended discussion. It is sufficient to say the evidence was in sharp conflict and its weight was for the determination of the jury.—Affirmed.

MULRONEY, C. J., and HALE, GARFIELD, MANTZ, and HAYS, JJ., concur.

BLISS and SMITH, JJ., take no part.