STATE of Iowa, Appellee,

v.

Ronald Allen KELSEY, Appellant.

No. 54717.

Supreme Court of Iowa.

Nov. 15, 1972.

James L. Chipokas, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., David F. McGuire, Cedar Rapids City Atty., and Benjamin W. Blackstock, Cedar Rapids Asst. City Atty., for appellee.

Before MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS, and McCORMICK, JJ.

Donald J. Bormann, of Prichard, Hanson, Doran & Bormann, Emmetsburg, for appellant.

Richard C. Turner, Atty. Gen., Bennett Cullison, Jr., and Robert D. Jacobson, Asst. Attys. Gen., and Joseph J. Straub, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

RAWLINGS, Justice.

Defendant, Ronald Kelsey, was charged with three crimes: murder in the perpetration of a robbery, premeditated murder, and robbery with aggravation. Trial jury found Kelsey guilty of the latter offense. From judgment accordingly entered, he appeals. We affirm.

Appropriate here is this observation in State v. Gilroy, 199 N.W.2d 63, 65 (Iowa 1972): "The basic factual situation is as set forth in State v. Cunha, 193 N.W.2d 106 (Iowa). It need not be here repeated." See also State v. Hinsey, 200 N.W.2d 810 (Iowa 1972).

Issues here presented are, trial court erred in (1) permitting introduction of hearsay testimony, (2) overruling defendant's motion for a directed verdict based on claimed insufficiency of evidence to sustain a robbery with aggravation charge. These assignments will be considered in reverse order.

I. This court has repeatedly held:

"[I]n considering claimed insufficiency of evidence to sustain a conviction we view all evidence in that light most favorable to the State, and accept as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. Also, it is for the fact finder, not us, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record. (Authorities cited)." State v. Fields, 199 N.W.2d 144, 146–147 (Iowa 1972).

II. As aforesaid, Kelsey contends the evidence was not sufficient to sustain the robbery with aggravation charge.

Addressing ourselves to this same issue in State v. Gilroy, 199 N.W.2d at 67, we said, to the extent here relevant:

"[T]his court has heretofore held, in effect, there was sufficient evidence to create a jury issue regarding Gilroy's participation in the robbery. (Authorities cited).

"But defendant argues there is an absence of essential evidence disclosing any money was taken from the Fareway Store at the time here concerned. We are not so persuaded.

"Robert Lee Cramer, assistant store manager, testified he checked out the four counter machines immediately after Mr. Bay was shot. This revealed a shortage of $27 in machine No. 4, which 'did not arise out of the course of business.'

" * * *

"The foregoing admittedly stands as circumstantial evidence of 'taking', an essential element of any robbery. (Authorities cited). But we have often held, such evidence may be equal in value and sometimes more reliable than that which is direct. Where, however, circumstantial evidence alone is relied on as to an essential element, the circumstance or circumstances must be entirely consistent with defendant's guilt, wholly inconsistent with any rational hypothesis of his innocence, and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. Like direct evidence it must raise a fair inference of guilt, generating something more than suspicion, speculation or conjecture. (Authorities cited).

"In that regard the record, as aforesaid, discloses sufficient evidence upon which the jury could fairly find Gilroy was an accomplice before the fact; accomplice Kelsey entered the Fareway Store armed with a gun with which he shot Mr. Bay; the invaders fled; immediately thereafter money was unaccountably found missing from one of the counter machines; * * *.

"Viewing this, and all attendant evidence, most favorably to the prosecution we find it reasonably tends to support the robbery charge. It clearly does more than generate suspicion, speculation and conjecture and suffices to raise a fair inference of guilt.

"More specifically, the record discloses adequate substantive evidence from which the jury could reasonably conclude money was taken during the fatal Fareway Store incident."

From this flows the conclusion there is no merit in Kelsey's instant contention.

III. June 15, 1969, Kelsey, Cunha, Gilroy and Hinsey, accompanied by Kristine Henninger, Paula Campbell, and Mary Meighan went by automobile to The Grill, a restaurant in Waterloo. Ultimately two other girls emerged from that establishment and became involved in a dispute with the automobile occupants. Gilroy and Cunha left the vehicle in order to stop the affray. Kelsey remained behind the wheel. Kristine was seated next to him. Hinsey was in the rear seat, behind Kelsey, with Paula and Mary. Gilroy and Cunha went to the driver's side of the car and one of them there made the instantly controverted statement. In material part this is the record now before us as it relates to Kristine Henninger's testimony:

"Q. And was there a conversation then between Al Gilroy and Louie Cunha and these two girls? A. Yes.

"Q. And this conversation was in your presence? A. Yes.

"Q. You heard it? A. Yes.

"Q. You were sitting in the front seat? A. Yes.

"Q. Next to the defendant? A. Yes.

"Q. Was there any talk of any breaking of the law that had gone on among these four fellows?

"MR. NITCHALS: (Kelsey's trial counsel). I object, your Honor, that this is improper questioning of the witness. Counsel is trying to put words into the witness' mouth, leading and suggestive.

"THE COURT: Sustained.

"BY MR. STRAUB:

"Q. What was the conversation?

"MR. NITCHALS: I object, your Honor, that this is hearsay and not the best evidence.

"THE COURT: Overruled.

"BY MR. STRAUB:

"Q. You may answer. A. I heard one of the two men say that they wanted to get out of there and they didn't want an argument because the police were on them because they had broken out of jail and had robbed and shot a man.

"Q. Did they say what jail they broke out of? A. No.

"MR. NITCHALS: May it please the Court, I would like to ask that the statement just made by the witness be stricken from the record because it was not the statement of the witness—of the defendant Kelsey. It is hearsay, not founded upon fact, not shown what the speaker might have been talking about. It is not clear as to who made the statement. Irrelevant and immaterial.

"THE COURT: Overruled."

It should be inceptionally noted the hearsay objection here interposed was not involved in *Cunha, Gilroy* or *Hinsey,* all cited above.

Furthermore, Hinsey specifically admitted the damaging statement when made by Cunha or Gilroy.

Resultantly we are now, for the first time in this series of cases, called upon to determine whether admission in evidence of the aforesaid inculpatory statement, over defendant's hearsay objection, constitutes reversible error.

"In some of our recent cases we have defined hearsay. See Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N. W.2d 868, 875; Crane v. Cedar Rapids and Iowa City Railway Co., 160 N.W.2d 838, 845 (Iowa 1968), affirmed 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176; and State v. Grady, 183 N.W.2d 707, 712 (Iowa 1971).

"In rule 301, Proposed Rules of Evidence for the United States Courts and Magistrates, hearsay is defined in this manner:

"'(a) Statement. A "statement" is ▇ an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

"'(b) Declarant. A "declarant" is a person who makes a statement.

"'(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

"'* * *'

"The omitted portion of the quoted rule deals with statements which are not hearsay.

"The Advisory Committee in commenting on subdivision (c) said: 'The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. McCormick § 225; 5 Wigmore § 1361, 6 *id.* § 1766.'" State v. Smith, 195 N.W. 2d 673, 675–676 (Iowa 1972).

▇ In substance, the hearsay rule does not prevent a witness from testifying only as to what has been heard, being rather a restriction on the proof of fact through extrajudicial statements. See Dutton v. Evans, 400 U.S. 74, 86–89, 91 S.Ct. 210, 218–219, 27 L.Ed.2d 213 (1970).

▇ In that vein it is to us apparent the assertion by Cunha or Gilroy, testified to by Kristine Henninger, was for the purpose of proving the facts, i. e., commission of the robbery attendant murder of a man by Kelsey and his three accomplices. Surely it was not testimonially offered merely to prove the utterance was made in Kristine's presence. See 5 Wigmore on Evidence, § 1361 (3d ed.); cf. Lemke v. Mueller, 166 N.W.2d 860, 870–871 (Iowa 1969).

This perforce means the out-of-court statement by Cunha or Gilroy, implicating Kelsey, was hearsay as to the latter. See Nelson v. O'Neil, 402 U.S. 622, 623–627, 91

S.Ct. 1723, 1724–1726, 29 L.Ed.2d 222 (1971); State v. Smith, quoted above.

IV. Even so the State argues, in essence, the utterance must be held admissible as a "tacit admission", a so-called exception to the hearsay rule.

By way of differentiation it is to be noted Kelsey is not here charged with conspiracy. See Dutton v. Evans, *supra;* State v. Theodore, 260 Iowa 1038, 1046, 150 N.W.2d 612 (1967); State v. Davis, 230 Iowa 309, 316, 297 N.W. 274 (1941); State v. Archibald, 204 Iowa 406, 409, 215 N.W. 258 (1927).

In a civil case, Friedman v. City of Forest City, 239 Iowa 112, 30 N.W.2d 752 (1948) this court, though not so identifying it, dealt with the matter of tacit admission. There we said, 239 Iowa at 133–134, 30 N.W.2d at 763:

"An admission may be inferred from silence where the silence is improper or unnatural; and a definite statement of fact in connection with a failure to reply thereto, is, under certain conditions, allowed in evidence as an admission of the truth of the statement. 31 C.J.S., Evidence, section 294. However, such evidence should be received with caution and is incompetent if the situation or conditions are not such that the natural and reasonable inference from such silence is an admission of the truth of the statement. Doherty v. Edwards, 227 Iowa 1264, 1272, 290 N.W. 672. The inference may be safely made only where no other explanation is equally consistent with silence. I Wigmore on Evidence, Third Ed., section 107. See, also, Smith v. American Stores Co., 156 Pa.Super. 375, 40 A.2d 696, 698."

More specifically, as stated in 29 Am. Jur.2d, Evidence, § 638:

"Recognizing that at its best, the doctrine of assenting silence brings about the weakest assumption known to the law, the courts generally have imposed conditions upon the introduction of evidence that an alleged admission by silence has occurred. To constitute proof of an admission by silence the evidence must disclose that (1) the statement was extrajudicial; (2) it was incriminatory or accusative in import; (3) it was one to which an innocent man would in the situation and surrounding circumstances naturally respond; (4) it was uttered in the presence and hearing of the accused; (5) he was capable of understanding the incriminatory meaning of the statement; (6) he had sufficient knowledge of the facts embraced in the statement to reply thereto; and (7) he was at liberty to deny it or reply thereto."

See also 29 Am.Jur.2d, Evidence, § 610; 31A C.J.S. Evidence, § 294.

It is also well settled:

"* * * that in order for the failure of an accused person to deny an incriminating statement to be admissible as evidence against him, the nature of the statement must be such as would, under the circumstances, naturally provoke a denial from an innocent person similarly situated. It is not essential, however, that the statement assume the form of a direct charge; it may be such as would lead reasonable persons similarly situated to construe it as incriminating. The test is whether persons similarly situated would have felt themselves called upon to deny the statements affecting them in the event that they did not intend to express acquiescence by their failure to do so." 29 Am.Jur.2d, Evidence, § 639.

See also 31A C.J.S. Evidence, § 295.

In such instances it is generally held the court shall preliminarily determine whether the circumstances were such as to reasonably require a reply by the party to an accusatory statement, but for the jury to decide whether that person actually heard and understood the assertion. See Friedman v. City of Forest City, *supra;* State v. Dexter, 115 Iowa 678, 681, 87 N.W. 417 (1901); Thurmond v. State, 212 Miss. 36, 53 So.2d 44, 46 (1951); 4 Wigmore on Ev-

idence, § 1071 (3d ed.); McCormick on Evidence, § 247 at 528, et seq.; 31A C.J.S. Evidence, § 296. But see 29 Am.Jur.2d Evidence, § 644.

In relatively recent times, however, some courts have repudiated application of the foregoing doctrine in the field of criminal law.

Demonstrably the court said in Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904, 905–906 (1967):

"The Supreme Court of the United States declared in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, that:

" 'The Fourteenth Amendment secures against state invasion * * * the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence.'

"Thus, in speaking of the right of a defendant against self-incrimination in Pennsylvania, it is no longer necessary to distinguish between States and Federal cases. The protection against self-incrimination because of the 14th amendment which guarantees to all United States citizens, no matter where located, the immunities proclaimed to them in Federal territory, applies as effectively in Pennsylvania and the other States as it does in territory actually under the jurisdiction of the United States government.

"It accordingly follows that all cases which were decided in Pennsylvania prior to the Malloy decision are no longer authoritative if they conflict with the Fifth Amendment to the Constitution of the United States, which declares that no person 'shall be compelled in any criminal case to be a witness against himself.'

" * * *

"This rule, which has become known as the tacit admission rule, is too broad, widesweeping, and elusive for precise interpretation, particularly where a man's liberty and his good name are at stake. Who determines whether a statement is one which 'naturally' calls for a denial? What is natural for one person may not be natural for another. There are persons possessed of such dignity and pride that they would treat with silent contempt a dishonest accusation. Are they to be punished for refusing to dignify with a denial what they regard as wholly false and reprehensible?

"The untenability of the tacit admission rule is illustrated in the following startling proposition. A defendant is not required to deny any accusation levelled at him in a trial no matter how inculpatory. He may be charged with the most serious of offenses, including murder and high treason. A cloud of witnesses may testify to circumstances, events, episodes which wrap him in a serpent's embrace of incrimination, but no inference of guilt may be drawn from his failure to reply or to take the witness stand. Indeed, and properly so, if the prosecuting attorney or the judge makes the slightest reference to the fact that the accused failed to reply to the accusations ringing against him, and a verdict of guilt follows, a new trial is imperative. * * *

"How so incongruous a doctrine ever gained solemn authoritativeness might well be a subject for a long article in a law review. Especially when one reflects on the fact that the rule is founded on a wholly false premise. One can understand how a principle of law built on solid rock might incline to slant from the perpendicular because of over-heavily superstructure piled on it as it rises higher and higher into the realm of hypothesis, but the tacit admission rule has no solid foundation whatsoever. It rests on the spongey maxim, so many times proved unrealistic, that silence gives consent. Maxims, proverbs and axioms, despite the attractive verbal packages in which they are presented to the public, do not necessarily represent universal truth."

See also Walker v. United States, 404 F.2d 900, 902–903 (5th Cir. 1968); People v. Spencer, 78 Cal.App.2d 652, 178 P.2d 520, 523 (1947); Commonwealth ex rel. Shadd v. Myers, 423 Pa. 82, 223 A.2d 296, 301–302 (1966).

And in Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L. Ed.2d 694 (1966) is this apt statement:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. Cf. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); Comment, 31 U.Chi.L.Rev. 556 (1964); Developments in the Law—Confessions, 79 Harv.L.Rev. 935, 1041–1044 (1966). See also Bram v. United States, 168 U.S. 532, 562, 18 S.Ct. 183, 194, 42 L.Ed. 568 (1897)."

See also Grunewald v. United States, 353 U.S. 391, 421–423, 77 S.Ct. 963, 982–983, 1 L.Ed.2d 931 (1957); Carnley v. Cochran, 369 U.S. 506, 513–517, 82 S.Ct. 884, 888–890, 8 L.Ed.2d 70 (1962); Alberty v. United States, 162 U.S. 499, 16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896); Fowle v. United States, 410 F.2d 48, 50–51 (9th Cir. 1969); United States v. Brierly, 387 F.2d 597, 600–601 (3d Cir. 1967); State v. Peterson, 189 N.W.2d 891, dissent at 898 (Iowa 1971); State v. Osborne, 258 Iowa 390, 393, 139 N.W.2d 177, 179 (1965).

■ In light of the foregoing we now hold, evidential use of "tacit admissions" by an accused offends the proscription included in the Fifth Amendment of the United States Constitution against self-incrimination and is therefore no longer permissible in criminal trials within this jurisdiction.

■ V. Consequently, the question posed is whether admission in evidence of the one item of hearsay instantly involved compels a reversal of this case. We are satisfied it does not.

The record irrefutably discloses (1) Kelsey entered the Fareway Store in Algona armed with a deadly weapon, with which he killed Mr. Bay, the manager, (2) an attendant robbery was perpetrated, (3) Kelsey and his accomplices then fled.

A review of the record fairly shrieks the guilt of this defendant. It is consequently inconceivable that admission of the hearsay here involved, mentioning neither names, dates nor places, could have possibly influenced the jury to reach an improper verdict. We therefore hold the admission of such hearsay was harmless beyond a reasonable doubt. See Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 1059–1060, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728–1729, 23 L.Ed.2d 284 (1969); Bruton v. United States, 391 U.S. 123, 135, 88 S. Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); Chapman v. California, 386 U.S. 18, 21–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967); Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). See also State v. Wallace, 259 Iowa 765, 771–772, 145 N.W.2d 615 (1966).

■ As stated in *Lutwak, supra,* "A defendant is entitled to a fair trial but not a perfect one." Viewed in that perspective Kelsey has no cause for complaint.

Affirmed.